280 F.2d 536
 Willie HOLLY, Appellant,
v.
W. Frank SMYTH, Jr., Superintendent of the Virginia State
Penitentiary, Appellee.
 No. 8058.
 United States Court of Appeals Fourth Circuit.
 Argued April 28, 1960.
Decided June 3, 1960.
 
 F. D. G. Ribble and Daniel J. Meador, Charlottesville, Va. (court-appointed counsel), for appellant.
 Reno S. Harp, III, Asst. Atty. Gen. of Virginia, (A. S. Harrison, Jr., Atty. Gen. of Virginia, on the brief), for appellee.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit judges.
 SOBELOFF, Chief Judge.
 
 
 1
 The constantly recurring problem of a defendant's right to counsel in a criminal case is the issue in this habeas corpus appeal. Willie Holly, presently confined in the Virginia State Penitentiary, petitioned the United States District Court for the Eastern District of Virginia for a writ of habeas corpus, alleging that he was being deprived of his liberty by the appellee, the Superintendent of the Penitentiary, in violation of the United States Constitution. Without calling for a reply and without a hearing, the court dismissed the petition as failing 'to state any ground valid in law for the issuance of the said writ or to establish that he is unlawfully detained.' The court also required a certificate of probable cause, required for appeal under 28 U.S.C.A. 2253. Holly, now represented by counsel appointed by this court, has appealed from the District Court's action. As has been done occasionally in the past, we have considered the case on its merits, and that determination will here govern the issuance of a certificate of probable cause by a judge of this court. See Plater v. Warden, 4 Cir., 1958, 261 F.2d 445.
 
 
 2
 Since the petition was dismissed without a hearing, as failing to state grounds for relief, we must, for purposes of this appeal, accept as true the facts alleged in the petition along with the accompanying exhibits, which, with the order of the District Court, constitute the entire record.[1]
 
 
 3
 The following facts are revealed: In 1942, Holly, along with several co-defendants, was tried and convicted on five charges of storebreaking in the Hustings Court for the City of Portsmouth, Virginia. He had pleaded not guilty to three of the charges and guilty to two of them. At the time Holly was only seventeen years old and had never previously been convicted of any criminal offense. The items stolen consisted of articles of interest to boys, such as bicycles, baseball equipment, cigarettes, etc. All of the codefendants were represented by counsel hired by their parents. Holly alone was not represented, nor did the co-defendants' counsel undertake to defend him. His petition in the District Court further alleged that he was unable to obtain counsel, that he had no knowledge of the law or of his rights, that he was not advised of his right to counsel, and that the trial court did not appoint counsel to aid him. Certified copies of the judgments show that Holly was sentenced to one year in the state penitentiary on each of the five counts, the sentences to run consecutively, whereas each of the co-defendants was sentenced to the State Board of Public Welfare. Holly attributes this disparity in treatment-- a five year sentence to the penitentiary as opposed to the milder disposition-- to the fact that he was denied the services of an attorney.
 
 
 4
 In the argument before us it was brought out that in Virginia sentencing youths to the Board of Public Welfare, not to the penitentiary, is the treatment normally given juvenile offenders under 18 years old. It appears that in 1942, as today, there were special statutory provisions making this distinction between persons under 18 years of age and adult offenders. These statutes forbid commitment of a delinquent child to the penitentiary unless the offense is aggravated or the child is of an extremely vicious or unruly disposition.[2] The statutes further stipulate that an adjudication of the child's status under the juvenile statutes shall not operate to impose upon him any of the disabilities ordinarily resulting from a criminal conviction.[3] One highly important consequence of being accorded the benefits of the juvenile delinquent statutes instead of being sentenced to the penitentiary is to make the offense unavailable as a basis for applying the state's recidivist law.[4]
 
 
 5
 In addition to Holly's own allegations that he had no attorney in the 1942 proceeding, the record contains the certificate of the clerk of the Hustings Court for the City of Portsmouth, referring to Holly's case in 1942, which recites that: 'The records do not show that he had any counsel.' Also in the record are affidavits of two of his co-defendants at the 1942 trial, asserting that the court: 'did not appoint counsel for any of the defendants, and that he, Willie Holly, was the only defendant who was not represented by counsel. The only counsel on the case when we were tried on five charges of storebreaking was the counsel hired by the co-defendants' parents.'
 
 
 6
 There were later prosecutions which require no detailed consideration, and in 1951 Holly was sentenced to an additional ten years in the penitentiary under the Virginia recidivist statute, section 53-296 of the Virginia Code, 1950, as a third offender. In 1957, he was sentenced to a further 15 year term on proof that he had been convicted of a felony four times. The convictions and sentences in 1942 formed the basis in part for these additional 10 and 15 years terms, and it is conceded by the State that Holly is presently serving the recidivist sentences. It is also undisputed on this appeal that if the 1942 convictions are void because of the alleged constitutional infirmity of those proceedings, then the recidivist sentences are also void, for Holly would then not have been a third offender in 1951 or a fourth offender in 1957. Holly may at this time, by habeas corpus, attack the recidivist sentences on this ground. See: McDorman v. Smyth, 1948, 188 Va. 474, 50 S.E.2d 423; Fitzgerald v. Smyth, 1953, 194 Va. 681, 74 S.E.2d 810.
 
 
 7
 Holly brought a petition in 1958 seeking a writ of habeas corpus in the Hustings Court of the City of Portsmouth. He attacked the 1942 convictions for storebreaking as void for lack of counsel. His petition was denied, a writ of error was refused by the Supreme Court of Appeals of Virginia, and the Supreme Court of the United States denied certiorari, 1959, 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83. Thus Holly has, as the state concedes, properly exhausted his state remedies.
 
 
 8
 Denial of the constitutional right to counsel is one of the grounds for relief most often raised in the numerous appeals in this court, involving the legality of custody of both state and federal prisoners. In many instances, we are confronted with bald allegations of denial of counsel, but no facts are alleged upon which the claims rest. In others, it is clear that the petitioners, if state prisoners, have not properly presented their claims to the state courts. The record before us demonstrates that this case falls into neither of these categories.
 
 
 9
 In all federal criminal trials involving serious offenses, defendants are entitled, under the Sixth Amendment, to be advised of their right to an attorney and to have one appointed for them if they are financially in need. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Von Moltke v. Gillies, 1948, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. In state criminal trials, however, the Supreme Court has not formally abandoned the distinction, first made in Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, between capital and non-capital offenses. If the offense is capital, the lack of counsel, unless the right is intelligently waived, is held to be a violation of due process of law under the Fourteenth Amendment to the Federal Constitution, voiding the conviction and sentence. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Williams v. Kaiser, 1945, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Tomkins v. State of Missouri, 1945, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; Hawk v. Olson, 1945, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Reece v. State of Georgia, 1955, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77. In non-capital state cases, on the other hand, the state's failure to afford a defendant the assistance of counsel is said to violate due process only 'when there are special circumstances showing that without a lawyer a defendant could not have an adequate and fair defense.' Palmer v. Ashe, 1951, 342 U.S. 134, 135, 72 S.Ct. 191, 192, 96 L.Ed. 154. See also: Betts v. Brady, supra; Harvey v. Smyth, 4 Cir., 1958, 255 F.2d 21; Morrison v. Smyth, 4 Cir., 1960, 273 F.2d 544.[5]
 
 
 10
 A review of the non-capital state cases raising the question of lack of counsel convinces us that in the instant case such special circumstances were present as to render Holly's trial in 1942, if without counsel, void under the Fourteenth Amendment. The Supreme Court cases where special circumstances were found not to exist have not involved youthful defendants, without previous experience in criminal cases, and faced with complex legal issues. In Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, the defendant was a mature man 43 years of age, of normal intelligence, and with previous experience in criminal trials. The issue at that trial was characterized as the rather simple one of the defendant's alibi. In Foster v. People of State of Illinois, 1947, 332 U.S. 134, 138, 67 S.Ct. 1716, 1718, 91 L.Ed. 1955, the petitioner, 34 years old when sentenced in the state court upon a plea of guilty to a charge of burglary, alleged no facts indicating special circumstances. He only made, to use the Court's language, 'the bald claim that, merely because the record does not disclose an offer of counsel to a defendant upon a plea of guilty, although the court before accepting the plea duly advised him of his 'rights of Trial' and of the consequences of such a plea, he is 'deprived of rights essential to a fair hearing under the Federal Constitution." Likewise in Bute v. People of State of Illinois, 1948, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986, the petitioner, 57 years old at the time of trial and conviction upon a plea of guilty alleged no fact other than that the record of the trial proceedings failed to show affirmatively that he was represented by counsel. See also: Gryger v. Burke, 1948, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (where defendant had extensive experience in previous criminal prosecutions); Quicksall v. People of State of Michigan, 1950, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188 (where petitioner, not a youth, was intelligent and not inexperienced in criminal courts).
 
 
 11
 In contrast, the factors present in the instant case have been emphasized many times by the Supreme Court as of a character which would make a trial, without counsel, lacking in the fundamental fairness required by the Fourteenth Amendment. In De Meerleer v. People of State of Michigan, 1947, 329 U.S. 663, 67 S.Ct. 596, 597, 91 L.Ed. 584, the petitioner, appearing without an attorney, was convicted in the state court of murder, a noncapital offense in Michigan. In unanimously holding that he 'was deprived of rights essential to a fair hearing under the Federal Constitution,' the Court pointed out the very features found in the present case, namely that the defendant was only 17 years old, faced with a serious and complicated criminal charge, and never advised of his right to counsel. The youth of the defendant unrepresented by a lawyer had been the most often mentioned of the special circumstances voiding a state conviction. In Wade v. Mayo, 1948, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647, the youth and inexperience of the defendant was the only special circumstance found, but this was deemed sufficient. In that case, the 18 year old defendant knew of his right to counsel and had expressly requested an attorney but, after this was denied, he cross-examined state witnesses himself and testified in his own behalf. Even this did not cure the fundamental constitutional defect. Other cases emphasizing the defendants' youth are: Uveges v. Commonwealth of Pennsylvania, 1948, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (where the state conviction for burglary was upset because the defendant was only 17, inexperienced in criminal procedure, and was not advised of his right to counsel); Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (a 21 year old defendant); Moore v. State of Michigan, 1957, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (17 year old defendant); Cash v. Culver, 1959, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (where a 20 year old defendant's request for counsel was rejected).[6]
 
 
 12
 In addition to Holly's age, his inexperience, and his not being advised of his right to counsel, another factor of importance appears. As previously mentioned, Virginia has a body of law designed to assure juvenile delinquents special treatment as distinguished from adult offenders. Though only 17 and without a past criminal record, and presumably eligible for such consideration, Holly was not given the benefits of these statutes. It may be that, if afforded counsel, Holly might have been accorded the leniency normally extended juvenile delinquents. It will scarcely be suggested that a 17 year old, who has had no previous encounters with the law and is unaided by counsel, could have sought effectively the legal protection available. This special factor added a degree of complexity to the proceedings and created a further necessity for competent legal assistance. Complexity of the particular legal problem is often mentioned as a weighty circumstance in Supreme Court opinions dealing with the right to counsel. Indeed, this might be solely sufficient. See, e.g., Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367.
 
 
 13
 One further feature deserves mention. To three of the charges at the 1942 trial, Holly chose to plead not guilty and to stand trial. In Gibbs v. Burke, 1949, 337 U.S. 773, 781, 69 S.Ct. 1247, 1251, 93 L.Ed. 1686 the Court observed: 'A defendant who pleads not guilty and elects to go to trial is usually more in need of the assistance of a lawyer than is one who pleads guilty.' Because of the several elements either alleged or plainly revealed by this record, we think that this case falls within the teaching of the above Supreme Court cases, that deprivation of counsel, in the face of special circumstances requiring such service, violates the Fourteenth Amendment.[7] It follows that if the circumstances alleged are established, the 1942 convictions and the sentence to the penitentiary cannot legally constitute a support for the recidivist sentences upon which Holly is being held.[8]
 
 
 14
 The state advances two additional arguments for affirmance of the decision below. The first is that Holly did, in fact, have counsel at his 1942 trial. To support this contention, the state has exhibited, on this appeal, a copy of the order of the state trial court to which Holly had applied in 1958 for a writ of habeas corpus. That order, even if it did clearly find that Holly had counsel in 1942, would not warrant affirmance here, for it is not in the record and the District Court had no knowledge of it. Also, more broadly viewed, it would merely contradict Holly's allegations, thereby raising an issue of fact requiring a hearing below. It is not appropriate to make the initial tender of factual issues in the Court of Appeals. In Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 118-119, 76 S.Ct. 223, 224, 100 L.Ed. 126, the Court pointed our:
 
 
 15
 '* * * where a denial of these constitutional protections is alleged in an appropriate proceeding by factual allegations not patently frivolous or false on a consideration of the whole record, the proceeding should not be summarily dismissed merely because a state prosecuting officer files an answer denying some of all of the allegations.'
 
 
 16
 Moreover, the state court's order is not necessarily inconsistent with Holly's allegations. It recites: 'that counsel was present during said trial; that petitioner was afforded the benefit of representation by counsel, who appeared and argued in behalf of the petitioner and other co-defendants in connection with the said 1942 trials. * * *' Indisputably the co-defendants were represented by counsel, and the order may mean only that this attorney, hired to represent them, also afforded Holly some benefit. It is conceivable that a defendant may be adequately represented by the co-defendants' attorney; but it must be noted that a defendant's right is to the direct benefit of counsel, not merely a hoped for reflection of an advantage from a lawyer's efforts in behalf of fellow traversers. Their lawyer is a stranger to him and owes him no professional obligation. However, Holly denies even this in his petition. The interests of the several defendants might actually have conflicted. If the attorney was present to aid the others, one trial tactic which could benefit them would be to show that Holly was chiefly responsible for the crimes. In fact, the more severe treatment accorded Holly suggests this possibility. It is well established that the constitutional right to counsel requires more than merely nominal representation. The representation must be adequate. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Avery v. State of Alabama, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (holding that the representation afforded by petitioner's co-defendant's counsel was insufficient); Reece v. State of Georgia, 1955, 350 U.S. 85, 89-90, 76 S.Ct. 167, 100 L.Ed. 77; Moore v. State of Michigan, 1957,355 U.S. 155, 160, 78 S.Ct. 191, 2 L.Ed.2d 167.
 
 
 17
 The State also argues that since the Virginia Courts have determined the legality of Holly's detention, it was within the District Judge's discretion to dismiss the petition without a hearing. In support of this position the State points to our opinion in Lee v. Smyth, 4 Cir., 1958, 262 F.2d 53, 54 where we said:
 
 
 18
 'It is well settled that a federal district court need not consider a state prisoner's application for a writ of habeas corpus where the highest state court, presented with the same facts, has already determined the legality of the detention. Brown v. Allen, 1953, 344 U.S. 443, 465, 73 S.Ct. 397, 97 L.Ed. 469 * * *.'
 
 
 19
 The above statement does not mean that whenever a state court had determined the legality of a petitioner's confinement, federal courts may abdicate their responsibility. If the rule were read as broadly as the State suggests, it would mean that a federal court would practically never consider habeas corpus petitions from state prisoners, because, under the doctrine of exhaustion of state remedies, a state court ruling is normally insisted upon by the federal court before it will exercise its jurisdiction. The quoted sentence must be considered in connection with the reference to Brown v. Allen, 1953, 344 U.S. 443, 465, 73 S.Ct. 397, 97 L.Ed. 469, where the Supreme Court held that if the State Court record and findings disclosed that there has been a fair and satisfactory consideration of the facts, the federal court need not have a rehearing on the same facts. The record here is totally deficient in this respect; we are not told what evidence was considered or what factual findings were made. Hence the District Court could not evaluate the State Court's factual conclusions or treat them as a discretionary ground for denying the petitioner a hearing. The Supreme Court said, 344 U.S. at page 463, 73 S.Ct at page 410, that the writ may be refused without a hearing:
 
 
 20
 '* * * if the court is satisfied, by the record, that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion. Where the record of the application affords an adequate opportunity to weight the sufficiency of the allegations and the evidence, and no unusual circumstances calling for a hearing are presented, a repetition of the trial is not required.'
 
 
 21
 Moreover, the rule Brown v. Allen relates only to the necessity for factual inquiries; it in no way relaxes the duty of the District Court to make its own constitutional determination.[9] Thus, if a State Court should conclude that indirect representation by the presence of a co-defendant's counsel met the requirements of due process, such determination would not absolve the federal court from its duty to consider the petitioner's application.
 
 
 22
 For the above reasons, it is concluded that Holly should be granted a hearing, with counsel, and an opportunity to establish the facts alleged in his petition. If it be determined that he was not represented by counsel at the 1942 trial, then the District Court should grant him appropriate relief. The certificate of probable cause will be granted and the case is
 
 
 23
 Reversed and remanded for proceedings not inconsistent with this opinion.
 
 
 24
 The court expresses its appreciation to the court-appointed counsel, Dean F. D. G. Ribble and Professor Daniel J. Meador, for their very helpful service.
 
 
 
 [1]
 See: Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Williams v. Kaiser, 1945, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Tomkins v. State of Missouri, 1945, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; House v. Mayo, 1945, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367; Palmer v. Ashe, 1951, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154; Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135; Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 1956, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126; Cash v. Culver, 1959, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557. In all of these cases, the petitioners alleged denial of their right to counsel under the Fourteenth Amendment, and, because the petitions were dismissed without hearings in the courts below, the Supreme Court accepted the allegations as true and decided the constitutional questions presented
 
 
 [2]
 Virginia Code, 1942, sec. 1910; Virginia Code. 1950, sec. 63-283
 
 
 [3]
 Virginia Code, 1942, sec. 1905; Virginia Code, 1950, sec. 63-266
 
 
 [4]
 Virginia Code, 1950, sec. 53-296
 
 
 [5]
 There is, apparently, also a distinction between a state criminal defendant's right, in a non-capital case, to be represented by his own counsel and the requirement that the state furnish counsel to an indigent defendant. With respect to the right to be represented by one's own counsel, it seems to be absolute and no showing of special circumstances is required. House v. Mayo, 1945, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; Chandler v. Fretag, 1954, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4; but cf. Crooker v. State of California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448
 
 
 [6]
 See also Judge Soper's excellent dissenting opinion in Stonebreaker v. Smyth, 4 Cir., 1947, 163 F.2d 498, 502, involving an inexperienced 21 year old youth. The majority decided the case upon procedural grounds, so Judge Soper's analysis did not, necessarily, represent a minority view of this court on the special circumstances point
 
 
 [7]
 Other Supreme Court cases finding special circumstances are: Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690; Palmer v. Ashe, 1954, 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154; Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135
 
 
 [8]
 Because of out holding that this case falls within the special circumstances doctrine, it is unnecessary for us to consider the additional arguments, forcefully presented by Holly's court-appointed attorneys, that the lack of counsel constituted a denial of due process of law under the Fourteenth Amendment. They maintained that, as to the right to counsel, recent Supreme Court decisions have, in effect, overruled the distinction between capital and non-capital state trials, initially formulated in Betts v. Brady, supra. It is first argued that the recent court martial cases, particularly Kinsella v. United States ex rel. Singleton, 1960, 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268, rejecting the distinction between capital and non-capital cases with respect to the protections of Article III, section 2 of the Constitution and the Fifth and Sixth Amendments, have also overruled the distinction under the Fourteenth Amendment. Supporting this argument is language in the Court's opinion in Kinsella v. United States ex rel. Singleton, where the majority, in meeting the dissenter's reliance upon Betts v. Brady, said, at page 246 of 361 U.S., at page 304 of 80 S.Ct.: 'Obviously Fourteenth Amendment cases dealing with state action have no application here, but if they did, we believe that to deprive civilian dependents of the safeguards of a jury trial here, an infamous case by constitutional standards, would be as invalid under those cases as it would be in cases of a capital nature.'
 Beyond this, it is strongly contended that since there is an unqualified right to have, at state trials, one's own paid counsel of his choosing, the implication of Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, is that an indigent also has this unqualified right. In other words, by requiring special circumstances to be present before the pauper may have counsel appointed in non-capital state cases, whereas a defendant with money has an absolute right to retain his own paid counsel, the pauper is denied the equal protection of the law under the Fourteenth Amendment. This implication from the Griffin case, which dealt with the right of an indigent to a transcript to make his appeal effective, has been suggested by other legal scholars. See: Hamley, C.J., 'The Impact of Griffin v. Illinois on State Court-Federal Court Relationships,' 24 F.R.D. 75, 79, (1959); Schaefer, 'Federalism and State Criminal Procedure,' 70 Harv.L.Rev. 1, 8-10 (1956); Willcox and Bloustein, 'The Griffin Case-- Poverty and the Fourteenth Amendment,' 43 Cornell L.Q. 1, 23-25 (1957); Gellhorn, American Rights, (1960), at page 23.
 
 
 [9]
 For a thorough analysis of what is and what is not required under the ruling in Brown v. Allen, see United States ex rel. Sileo v. Martin, 2 Cir., 1959, 269 F.2d 586, a case remarkably similar to the instant case