**David Nathaniel HARRIS**

v.

**WARDEN MARYLAND PENITENTIARY.**

**Civ. A. No. 13030.**

United States District Court
D. Maryland,
Civil Division.

Jan. 17, 1962.

H. Russell Smouse, Baltimore, Md. (court appointed), for petitioner.

Thomas B. Finan, Atty. Gen. of Md., Robert F. Sweeney, Asst. Atty. Gen. of Md., for respondent.

CHESNUT, District Judge.

In the above case a Maryland State Prisoner has on November 20, 1961, filed an amended petition for release on habeas corpus. His original petition of the same nature was filed in this court on May 12, 1961. On June 19, 1961 I reviewed at considerable length in a written opinion the averments of his original petition and then concluded that for the reasons stated therein the petition was thereby dismissed and the Clerk was instructed to send a copy of the order and opinion (to be found in the record in the present case) to the petitioner.

In his original petition and now again in the recently filed amended petition the only substantial question presented with regard to constitutional due process under the 14th Amendment is his allegation that he was convicted as the result of perjured testimony known to have been such by the State prosecuting officer. Between the date of the dismissal of his first petition and the filing of the amended petition the Court of Appeals for the 4th Circuit has decided a number of cases dealing with the discretionary authority of a federal district judge to dismiss a State prisoner's petition for habeas corpus without giving the prisoner a hearing in the matter. Particularly in point here are the cases of Whitley v. Steiner, 4 Cir., 293 F.2d

895 and Clark v. Warden Md. Penitentiary, 4 Cir., 293 F.2d 479.

In view of the possible application of these two cases to the instant case of Harris, I thought it desirable, after the State's answer to a show cause order, to set the amended petition for hearing in this court and upon the special further petition of Harris, I appointed H. Russell Smouse, Esq., a practicing Baltimore attorney (formerly an Assistant United States Attorney for this District) to represent him.

As stated in my opinion of June 19, 1961, Harris was indicted in the Circuit Court for Wicomico County, Maryland, on the charge of burglary, including the theft of a watch. He was tried on the charge of common law burglary and sentenced to 15 years in prison. He appealed from that sentence to the Maryland Court of Appeals where the judgment was affirmed by a per curiam opinion, reported in 219 Md. 405, 149 A.2d 778 (March 1959). Subsequently he filed a petition for a post conviction hearing under Art. 27, § 645A et seq., 1957 Code as amended, 1958 Supp., which was heard by Judge Duer who filed a written opinion (to be found in the record) dismissing the petition. From the latter ruling Harris again sought to appeal to the Maryland Court of Appeals where his petition for leave to appeal was denied per curiam on October 13, 1960, 223 Md. 673, 164 A.2d 281. From this adverse decision he applied for certiorari to the Supreme Court of the United States, which was denied February 20, 1961, 365 U.S. 823, 81 S.Ct. 707, 5 L.Ed. 2d 700.

It appears that Harris has now exhausted his judicial remedies under Maryland law; and the only open contention is that the Maryland judicial proceedings were contrary to the due process clause of the Federal 14th Amendment. In support of this contention, at the hearing in court on January 5, 1962, Mr. Smouse, the court appointed attorney, submitted that there were two reasons why he contended there had been a lack of due process in the Maryland judicial proceedings. One was that in the course of the original trial of Harris in the Circuit Court for Wicomico County, one of the important witnesses for the prosecution, Deputy Sheriff Bennett, had committed perjury and that the State prosecuting officer, Mr. Hamilton Fox, State's Attorney for Wicomico County, was chargeable with knowledge of the perjury. The other contention was that there was no legally sufficient evidence to support the conviction. I will consider both of these charges as developed on the evidence at the hearing in this court on January 5, 1962.

As to the second contention, that there was no legally sufficient evidence to support the conviction, the Attorney General of Maryland has given me a copy of the brief of the appellant on direct appeal from his sentence of imprisonment; and also there was filed here a transcript of the proceedings at the trial of the case. It appears that the defendant was represented by counsel both in the original trial and on the direct appeal therefrom; and it also appears that he was similarly represented by counsel in his post conviction hearing and application for leave to appeal therefrom. It will be noted that the point here made as to the insufficiency of evidence was not properly submitted to the Maryland Court of Appeals on the direct appeal and therefore was, under the applicable appellate rules, not properly presented for determination by the Maryland Court of Appeals. Nevertheless in the per curiam opinion it was stated with respect thereto as follows: "We deem it fitting to say that our scrutiny of the record persuades us that the result would not be different were we free to pass on the sufficiency of the evidence." I have also read the transcript of the evidence in the case and it is my opinion that there was sufficient evidence to warrant, and indeed require, the submission of the question of guilt or innocence to the jury. See Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L. Ed. 469, as referred to by the Court of Appeals for the 4th Circuit in Lee v.

Smyth, 262 F.2d 53, and Holly v. Smyth, 280 F.2d 536.

One important point in the evidence was the possession of an inscribed watch when the defendant was arrested on the charge of burglary; that is, possession of recently stolen articles. The defendant's explanation of the possession of the watch was apparently not accepted by the jury as truthful.

It appears that the defendant was indicted by the Grand Jury September 10, 1958 charging the burglary on or about January 4, 1958. It also appears in the evidence that at the time of the burglary a Hamilton watch inscribed with the name of "Milton T. Clark" had been stolen when the burglary was committed and in May 1958 the defendant was arrested having then and there a watch in his possession bearing the name of "Milton T. Clark" at whose residence the burglary was committed, and that said watch bearing the name of Clark had been presented to him some time before January 1958 on behalf of a volunteer fire department with which he was prominently connected. And it further appeared that on or about March 1958 before the defendant was arrested on the charge of burglary he had been taken into custody by a Maryland State Trooper called by the name of "Brown" by the defendant but by the name of "Bounds" by another witness, on a charge of disturbing the peace or acting as a Peeping Tom, and had been confined for about fifteen days thereon.

The alleged perjury in the trial of the defendant is predicated on the testimony at the trial of Deputy Sheriff Bennett. When he was recalled by the State he testified (see transcript page 38):

"Q. You know who arrested him?

"A. I did"

The charge is that Bennett's answer that he had arrested the defendant in March 1958 was knowingly false. From the transcript as a whole I find that the alleged falseness of the answer is apparently due to a confusion or misunderstanding of the term "arrest". It is not at once apparent how or why the particular officer who arrested the defendant was material but its importance was attributed by the petitioner here to the fact that it was his contention as a witness at the trial that the watch which was found in his possession when he was arrested by Deputy Sheriff Bennett and another officer in May 1958 on the burglary charge, was the same watch which he had been openly wearing on his wrist for many months after he bought it from an unnamed stranger about January 6, 1958; and that he, the defendant, had been wearing it at the time he was arrested on the Peeping Tom charge about March 1958, and wore it while he was in jail on that charge for about 15 days. It further appears that although the defendant had been brought into the police station by State Trooper "Brown" on suspicion, a warrant on the charge of disorderly conduct (that is Peeping Tom behavior) was formally issued shortly thereafter by the proper Magistrate and was handed to Deputy Sheriff Bennett to serve upon the defendant while in jail and that Bennett did so formally serve the warrant by reading it to the defendant while he was then in jail, prior, of course, to the time that he was shortly thereafter subsequently arrested on the burglary charge. At the hearing here I heard all three witnesses involved in this matter of alleged perjury; that is to say, the petitioner himself, Deputy Sheriff Bennett and the prosecuting State's Attorney, Mr. Fox.

■ I make as a finding of fact that there was no perjury committed by Deputy Sheriff Bennett, and there was no evidence to in any way even suggest that State's Attorney Fox had any suspicion at any time that there had been any perjury committed.

It may be relevant to note that for some years after the Supreme Court decided the case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, there were many habeas corpus cases

filed in this court charging lack of due process in that the prisoner had not had the benefit of counsel at the trial of his case. Johnson v. Zerbst was, of course, a case of a federal prisoner but the charge so frequently made in habeas corpus proceedings in this federal court was based on the same general principle as to the high importance of proper defense by counsel in a State prosecution. A very important and, at the time at least, a very significant decision in this respect was Betts v. Brady, a Maryland case, reported in 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595; but see recent opinion in Jones v. Cunningham, 297 F.2d 851, decided Jan. 3, 1962 by the 4th Circuit Court of Appeals; and it now appears from Whitley v. Steiner, supra (4th Circuit) that failure to appoint counsel to represent a defendant in a State prosecution where required by virtue of the nature of the case, is one of the exceptions to the general rule that failure of a defendant to take a direct appeal from a conviction is in legal effect a waiver of the subsequent charge of lack of due process. However, there is no contention here that there was an absence of due process because of lack of counsel because Harris had had adequate counsel at all stages of the State prosecution.

In more recent years one of the main charges of lack of due process by petitioners in habeas corpus in this court has been the charge of perjury known to the State's prosecuting officers and that is the charge with which we are concerned in the instant case. It is perhaps not entirely clear to me whether such a charge, if established by the evidence, would constitute any exception to the general principle of waiver by a defendant's failure to take a direct appeal and therefore in a number of recent habeas corpus cases on behalf of State prisoners, I have thought it desirable to have a full hearing in this court with respect to the fact alleged.

As a result of the full hearing in this court and the finding which I make that there was no perjury and therefore, of course, no knowledge of any perjury by the prosecuting State officers, I conclude that Harris' petition for the issuance of the writ of habeas corpus should be and it is hereby *denied* and the petition *dismissed* by this court this 17th day of January 1962. And the Clerk is instructed to send a copy of this order and memorandum opinion to the petitioner.