UNITED STATES of America ex rel. Albert SILEO, Petitioner-Appellant,

v.

Walter B. MARTIN, Warden, Attica Prison, and The People of the State of New York, Respondents-Appellees.

No. 334, Docket 25359.

United States Court of Appeals
Second Circuit.

Argued June 9, 1959.

Decided Aug. 14, 1959.

John V. Hanna, New York City (Ferdinand J. Wolf, New York City, on the brief), for petitioner-appellant.

George K. Bernstein, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., of State of New York and Paxton Blair, Sol. Gen. of State of New York, Albany, N. Y., on the brief), for respondents-appellees.

Before HINCKS and MOORE, Circuit Judges, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

█ This is an appeal by a prisoner of the State of New York, from an order of the United States District Court for the Western District of New York, Morgan, J., denying his application for a writ of habeas corpus. A certificate of probable cause and order granting leave to proceed *in forma pauperis* issued by that same court paved the way for petitioner's presentation of his appeal here.

By the proceeding below, Albert Sileo, presently serving sixty years as a second offender, sought to invalidate a judgment of the Court of General Sessions of New York imposing an eight-months sentence for the felonious transportation of stolen property, an automobile, into New York. This judgment was entered July 16, 1918 on petitioner's plea of guilty, previously received on July 10, 1918 immediately after his arraignment. Sileo was sixteen years of age at that time. The second conviction, the cause of petitioner's present incarceration, was for kidnapping. Sentence was imposed in 1931. Petitioner has been incarcerated continuously from that time until the present. It is elementary that the correctness of the present sentence as a second offender depends on the validity of the first conviction, here attacked. United States ex rel. Smith v. Jackson, 2 Cir., 1956, 234 F.2d 742.

Collateral attack on this 1918 conviction instituted in the courts of New York in 1956 resulted in a decision adverse to petitioner, as did successive appeals therefrom; these proceedings also effected an exhaustion of state remedies as required by 28 U.S.C. § 2254, to wit: (1) Motion for Writ of Error Coram Nobis to Court of General Sessions, denied June 28, 1956, Schurman, J.; (2) Denial affirmed, Appellate Division, March 19, 1957, 3 A.D.2d 740, 161 N.Y.S.2d 565; (3) Denial affirmed, Court of Appeals, October 24, 1957. 3 N.Y.2d 916, 167 N.Y.S.2d 931, 145 N.E.2d 875. A petition for a writ of certiorari was denied by the Supreme Court of the United States on March 31, 1958. Sileo v. People of State of New York, 356 U.S. 923, 78 S.Ct. 709, 2 L.Ed.2d 718. Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. Each of the aforementioned decisions was entered in the form of a simple order of denial or affirmation, without opinion or discussion of issues raised, and without any findings as to the facts.

Petitioner's claim, reduced to its essentials, is a simple one. He alleges that he was arrested on July 9, 1918 under indictments outstanding since the previous March 19, charging him with several crimes, including bringing stolen property into the state. He was held overnight by the police and on July 10, 1918, the next day, was taken before Judge Wadhams of the Court of General Sessions for arraignment and plea. Petitioner claims that without ever having received the assistance of counsel, or having been advised that he had a right to counsel, or asked if he desired counsel, he pleaded guilty to the stolen property charge; the claim now is that he did so because he thought that his mere presence in the automobile in question some time before made him guilty of the crime charged. At the same hearing he pleaded not guilty to a charge of assault under another indictment. He was thereupon taken to and held in the Tombs until July 16, 1918, when he was brought to the same court for the imposition of sentence. From the time of the arrest until the time of sentencing, it is alleged, he received no visits from anyone. At the time of sentencing, after the proceeding had begun, William Dean Embree, an attorney and member of the organization

which was the forerunner of the present Legal Aid Society, appeared in the courtroom and stated to the court that he was there to represent petitioner. Petitioner was sentenced to an indefinite term in the City Reformatory, where he was subsequently confined for some eight months.

The contention is that this conviction was invalid because lacking in due process of law, a deficiency stemming from the lack of assistance of counsel.

Attached to the petition sent to the District Court as exhibits were typewritten copies of the indictment and various markings on the back thereof, plus a typewritten copy of the minutes of the court proceeding in which petitioner was sentenced. Subsequent to the receipt of the petition the District Court received a copy of the printed record used in the appeal to the Appellate Division of the order of the Court of General Sessions denying petitioner's 1956 motion for a writ of error *coram nobis*. This same record also was employed as the record on appeal in the Court of Appeals by permission of that court. It is not clear whether the District Court called for this record, or whether it was voluntarily produced by the State, or supplied by petitioner. This record contained the transcript of the *coram nobis* proceeding in the Court of General Sessions, and also a copy of the July 16, 1918 minutes of sentence which the State had introduced as an exhibit at the *coram nobis* hearing. The printing of two other exhibits used in this hearing, the two indictments charging petitioner with the crimes to which he pleaded, and the markings thereon, was waived by the parties to the appeals under a stipulation that the certified copies of the actual indictments themselves would be handed up to the court on the argument of each appeal. Judge Morgan did not have these indictments before him.

The transcript of the *coram nobis* hearing clearly shows that the factual issues raised by petitioner in this federal habeas corpus proceeding were presented to the state courts in that proceeding as well as the principal legal question, that question being whether or not petitioner's conviction was obtained illegally, without due process, due to lack of assistance of counsel at the critical moment when petitioner, an inexperienced sixteen-year-old, was put to plea on a serious criminal charge. From the petition, the transcript in the record, and the argument here, it appears that the State has contended and still contends that petitioner was represented by counsel at his arraignment and plea, not only at his sentencing. Various cryptic notations and abbreviations on the indictment backs are relied on to show that one L. Fabricant, Esq., a member of the same organization as Mr. Embree, was counsel of record for petitioner and was present at his arraignment and plea. At the *coram nobis* hearing petitioner testified that he had no opportunity to talk to anyone after his arrest and prior to his being arraigned, that he was put to plea immediately after arraignment under both indictments, that no attorney represented him in court that day, that he was never told by the court or anyone that he had a right to an attorney, that he didn't know that he had such a right, that he was only sixteen years old at the time and had no previous arrests, but had been held for truancy sometime previously and had also been court-martialed by the Army after deserting from a fraudulent enlistment, being less than sixteen years old at that time. He further testified that no attorney ever spoke to him after he was returned to jail to await sentence, that he was brought to court for sentencing on July 16, 1918, and that there, for the first time, an attorney appeared on his behalf, but that the attorney never conferred directly with him even then. On cross-examination the State brought out the fact that the attorney, Mr. Embree, presented a character witness on petitioner's behalf, and also desired to put his mother on the stand, but that this was prevented due to lack of an interpreter. Mr. Embree then pleaded for leniency for petitioner on the basis that he had been led into the crime

by older persons. The minutes of sentence bear out most of this. The State put on two witnesses. The first was a Clerk of the Court of General Sessions, employed there since 1919, who testified that the markings on the 1918 indictments indicated that counsel had been assigned to represent petitioner and that counsel was present at the time of arraignment and plea; the second, an attorney, was a member of and active worker in the Legal Aid Society, Criminal Courts Branch, who produced a file card from the Society's files relative to petitioner's case, and who testified to the effect that the entries on that card indicated that Judge Wadhams had appointed Mr. Fabricant to represent petitioner on July 10, 1918. Nothing was noted on this card about the activities of Mr. Embree, who was apparently closely associated with Mr. Fabricant in voluntary defense work at that time. The State offered no direct testimony to prove that counsel was actually present to represent petitioner on July 10, 1918. The minutes of sentence, offered by the State, did bear under "Appearances" a notation that "L. Fabricant, Esq." was appearing for petitioner. These same minutes also stated that "Mr. W. D. Embree was assigned to represent the defendants." It was stipulated by the parties at the *coram nobis* hearing that no records dating back to 1918 were available at the city prison, that the stenographers of that period were dead, that there were no stenographic minutes of the pleading, and that the records of the court did not contain any notice of appearance filed on behalf of the petitioner except that which appeared on the indictment.

On the basis of the evidence thus adduced the Court of General Sessions denied, without opinion or findings, the motion for a writ of error *coram nobis*. Affirmances by the Appellate Division and the Court of Appeals followed, also without opinion.

After consideration of the petition and the state record on appeal, the District Judge allowed the petition to be filed *in*

*forma pauperis* and denied the writ on the merits, stating:

"As can be seen from * * * the printed record of the hearing had in the Court of General Sessions, the certified Record on Appeal to the Appellate Division to which is attached the Order of Remittitur from the Court of Appeals, petitioner has had the benefit of the full appellate process on the question raised before this court. As the State and Federal courts have the same responsibilities to protect persons from violation of their constitutional rights, the United States Supreme Court has concluded that a Federal District Court may decline, without a rehearing of the facts, to award a Writ of Habeas Corpus to a state prisoner where the legality of such detention has been determined on the facts presented by the highest State court with jurisdiction, whether through affirmance of the judgment on appeal, or denial of post-conviction remedies. Brown v. Allen, 344 U.S. 443, at [page] 465, 73 S.Ct. 397 [at page 412, 97 L.Ed. 469].

"This court is satisfied that the State process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion." In the matter of the Application of Albert Sileo, D.C.W.D.N.Y., Civil No. 7961, Memorandum of Decision, August 27, 1958.

█ In circumstances such as are here revealed, this court is of the view that Brown v. Allen, cited by the District Court, requires a federal district court to do more than, in effect, concur in the state courts' determination of the issues involved. Of controlling importance here is the fact that not one of the State courts which heard these highly controverted matters or reviewed them, particularly the Court of General Sessions where the evidence was initially adduced, made any findings whatsoever of the rele-

vant historical facts or expressed conclusions of law in an opinion discussing those facts.

In Brown v. Allen, Mr. Justice Reed, after noting the rule that a federal judge might refuse a writ where application for one had been made to and refused by another judge and the second judge is of the opinion that in the light of the record a satisfactory conclusion has been reached, stated:

"Applications to district courts on grounds determined adversely to the applicant by state courts should follow the same principle—a refusal of the writ without more, if the court is satisfied, by the record, that the state process has given fair consideration to the issues and the offered evidence, and has resulted in a satisfactory conclusion. Where the record of the application affords an adequate opportunity to weigh the sufficiency of the allegations and the evidence, and no unusual circumstances calling for a hearing are presented, a repetition of the trial is not required." 344 U.S. at page 463, 73 S.Ct. at page 410.

and this, for the reason that, as alluded to by Judge Morgan, both state and federal courts are charged with the responsibility of preserving the constitutional rights of persons in this country. Id., 344 U.S. at page 465, 73 S.Ct. 397.

Did the record of this application afford an *adequate* opportunity to weigh the sufficiency of the allegations and *of the evidence*? We think not. The actual 1918 indictments—the real evidence principally relied on by the State, the exhibits which must be observed by the trier to give any meaning or content to the testimony of the Clerk of the Court of General Sessions at the *coram nobis* hearing—these vital documents were not in the record presented to the District Court. Neither, apparently, was the file card from the Legal Aid Society files. To be sure petitioner's typewritten copy

of the notations on the indictment back was attached to his petition. But no such facsimile can really serve the purpose of the original in such circumstances. The District Court had *no* opportunity to weigh this evidence let alone an adequate one.

Are there any "unusual circumstances" present in the state proceedings as revealed by the record, circumstances requiring something more than a consideration of only that part of the record made available to the District Judge? Or as Justice Frankfurter put it in reducing to more specific terms the general principles announced by Mr. Justice Reed in Brown v. Allen:

"When the record of the State court proceedings is before the court, it may appear that the issue turns on basic facts and that the facts (in the sense of a recital of external events and the credibility of their narrators) have been tried and adjudicated against the applicant. Unless a vital flaw be found in the process of ascertaining such facts in the State court, the District Judge may accept their determination in the State proceeding and deny the application. On the other hand, state adjudications of questions of law cannot, under the habeas corpus statute, be accepted as binding. It is precisely these questions that the federal judge is commanded to decide." 344 U.S. at page 506, 73 S.Ct. at pages 437, 446.

Is there any indication of a "vital flaw" in this record?

The denial of *coram nobis* without findings or opinion, in the setting here presented, is, in our view, an "unusual circumstance" or "vital flaw" which should have dictated the necessity of a further hearing in the District Court. That denial could have been based on at least three different findings of fact.[1]

First, the General Sessions Judge may have found that petitioner was in fact

---

1. Other bases for the denial may be possible but we employ only the three mentioned, since they are sufficient.

represented by counsel on July 10, 1918, at the time of his arraignment and plea, disbelieving petitioner's testimony, and concluding that there was thus no denial of the right to counsel.

Second, the Judge may have found that petitioner was in fact not represented by counsel on July 10, 1918, but that the presence of counsel on July 16, 1918, the date of sentencing, was effective representation at a critical point in the proceeding and that petitioner's conviction was obtained in accordance with due process.

Third, it is conceivable that on *coram nobis* the Judge thought that petitioner had entered a plea of guilty with an adequate understanding of the nature of the crime and defenses to it, and thus was not harmed because the plea was apparently truthful.

No one, at this juncture, can tell on what basis Judge Schurman decided to deny petitioner's motion. The same is true of the decisions of the intermediate and final appellate courts of the State, each of which affirmed without opinion. The denial of certiorari by the United States Supreme Court imports no opinion on the merits. Brown v. Allen, supra. In a somewhat different context, this court has stated that such an obscuring of the actual, factual basis of a trier's decision could properly be considered a "vital flaw." United States ex rel. Rogers v. Richmond, 2 Cir., 1958, 252 F.2d 807, certiorari denied, 1958, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361 at page 810, discussing and distinguishing Cranor v. Gonzales, 9 Cir., 1955, 226 F.2d 83, certiorari denied, 1956, 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816. Faced with such a situation, the federal district court need not speculate as to the basis of decision in the state courts, but should itself proceed to a determination of the facts so that the federal question may be resolved.

█ The respondent cites this Court's recent decision in United States ex rel. Blank v. Jackson, 2 Cir., 1959, 263 F.2d 185, as supporting the decision of the District Court. The distinguishing difference between the Blank case and this one is that in Blank the judge who conducted the *coram nobis* hearing filed an opinion in which he made a specific finding to the effect that he disbelieved all the testimony of the petitioner there and all of his witnesses. See New York Law Journal, January 25, 1957, page 10. Had Judge Schurman made a similar finding as to this petitioner's testimony we would have no problem here. But in the absence of any findings the problem previously stated confronts us. For if the Judge on *coram nobis* found that petitioner's only representation was at his sentencing, and concluded that this did not amount to a due process violation invalidating the conviction, that conclusion of law would be one which the District Judge could not immediately and without reservation accept. Brown v. Allen clearly established that the District Judge must exercise an independent judgment as to the legal effect of the established historical facts. 344 U.S. at page 507, 73 S.Ct. 397. Here we have no way of knowing what historical facts were established in the State proceeding, nor are we sure of the legal basis of the State court's decision. Without passing on the question we merely note that serious due process issues can arise out of situations where young persons, charged with serious crimes, are allowed to plead guilty without the assistance of counsel. DeMeerleer v. People of State of Michigan, 1947, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584; Moore v. State of Michigan, 1957, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167; United States ex rel. Savini v. Jackson, 2 Cir., 1957, 250 F.2d 349. See United States ex rel. Marcial v. Fay, 2 Cir., 1957, 247 F.2d 662, certiorari denied, 1958, 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274. The lack of any determination of the historical facts in the State court in the form of written findings or an opinion made it imperative that the District Court proceed to a determination of those facts and evaluate the facts in the light of the decided cases.

On the record before us, petitioner is entitled to his day in the District Court. In now reversing the order of the District Court we express no opinion as to the ultimate findings and conclusions which may be reached. The order below is reversed and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.