Clyde Raymond NEAR, Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintend-
ent of the Virginia State Peniten-
tiary, Appellee.

No. 8713.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 27, 1962.

Decided Jan. 7, 1963.

W. A. Hall, Jr., Richmond, Va. (Robert Randolph Jones, and W. Griffith Purcell, Richmond, Va., on brief), for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Va. (Robert Y. Button, Atty. Gen. of Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and JOHN PAUL, District Judge.

J. SPENCER BELL, Circuit Judge.

This is an appeal from a denial by the District Court for the Eastern District of Virginia of a petition for a Writ of Habeas Corpus.

On December 8, 1958, Clyde Raymond Near, the petitioner, was indicted for murder by the grand jury of Powhatan County, Virginia. On January 6, 1959, an attorney was appointed to represent petitioner. Trial was held in the Circuit Court of Powhatan County on May 26 and 27, 1959. The jury found Near guilty of murder in the first degree, and fixed punishment at death. On August 4, 1959, the Circuit Court of Powhatan County, after taking testimony and hearing argument, denied Near's motion to set aside the verdict upon the grounds, among others, that the jury had been permitted to mingle with the spectators during the recesses of the trial and had been prejudiced by remarks made within their hearing. On October 14, 1959, and November 27, 1959, Near filed further motions to set aside the judgment because of alleged misconduct of a juror who had discussed the case with several persons and had listened to news telecasts concerning the trial, contrary to the judge's instructions. The Circuit Court of Powhatan County denied both motions without making any findings of fact or entering any written order in connection therewith. The Supreme Court of Appeals of Virginia affirmed the judgment of August 4, 1959. Near v. Commonwealth, 202 Va. 20, 116 S.E.2d 85 (1960), and the Supreme Court of the United States denied certiorari. Near v. Virginia, 365 U.S. 873, 81 S.Ct. 907, 5 L.Ed. 2d 862 (1961).

Near filed a petition for a Writ of Habeas Corpus in the Supreme Court of Appeals of Virginia in which he alleged the same grounds as are alleged in the instant petition. That Court denied the petition on November 22, 1961. In its order the Court responded to the allegation that prisoner was not present when the decision was made to allow the jury to separate by pointing out that the formal entries on the record showed that the prisoner was personally present at every stage of the trial, and that under its rules the record may not be controverted. The Supreme Court of the United States denied certiorari. Near v. Cunningham, 369 U.S. 862, 82 S.Ct. 951, 8 L.Ed.2d 19 (1962). Near then brought the instant petition for a Writ of Habeas Corpus under 28 U.S.C.A. § 2241 et seq.

The petition alleges two grounds for issuance of the writ. It is claimed that petitioner was denied due process of the law in that he was not present in the trial judge's chambers when the judge, counsel for petitioner, and the attorney for the Commonwealth agreed that the jury would not be sequestered and kept together under the custody of an officer during recesses of the court. It is also alleged that Near's constitutional right to due process of the law was denied him in that the verdict of the jury below was prejudiced by statements of spectators on the courthouse lawn made in the presence of the jurors during recesses of the trial, or that at the least, the integrity of the verdict was thereby impugned to a degree sufficient to make it void under the Fourteenth Amendment to the United States Constitution. It is alleged that the statements made included opinions of the spectators as to the proper punish-

ment of the petitioner, including opinions that the petitioner should be killed.

Counsel have agreed as to the substance of the testimony of each witness taken at the trial and at the hearing of August 4, 1959.

## I

■ Petitioner's first claim is based on the contention that due process guarantees to an accused the right to be present at every stage of his trial for a felony, especially where capital punishment is involved. So fundamental is this right that it may not be waived. Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L. Ed. 262 (1884). The courts of Virginia have jealously guarded this right in a long line of decisions culminating in Noell v. Commonwealth, 135 Va. 600, 115 S.E. 679, 30 A.L.R. 1345 (1923). In that case, Justice Kelly, after pointing out that the Virginia statute (Sec. 19.1–240 Code of Va. (1950)) was merely declaratory of the common law principle, held that " * * * conformity to the rule is essential to jurisdiction, and the accused cannot waive it". Citing with approval Hopt v. Utah, supra.

The record of the original trial showed two entries with respect to the prisoner's presence during the trial. An earlier entry showed that the Commonwealth Attorney and counsel for the defendant, with the judge, went into the judge's chambers, where it was agreed that the jurors should not be kept together during the recesses of the trial. A final entry on the record states as follows:

> "The Court certifies that at all times during the trial of this case the accused was personally present."

What was meant by the latter entry is, therefore, not clear. It could mean that, contrary to his claim, the prisoner was in fact present during the conference in the judge's chambers, or it could mean simply that the prisoner was personally present on all occasions which the entrant conceived to be a part of the trial and that this did not include the conference in the judge's chambers. There is

good reason, therefore, to think that had their rules of procedure not been thought to forbid the Supreme Court of Appeals of Virginia to go behind the formal declaration of the record for the purpose of clarifying it, the prisoner might well have succeeded in showing that he was not, in fact, present when an important decision was made, namely to allow the jury to separate during the trial. If the Court were so convinced, Near would have been entitled to his writ.

■ In any event, in a Habeas Corpus proceeding in the United States Courts, the petitioner is entitled to impeach such flat recitals of record, and this right was extended to state prisoners in Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954). Especially should the right be recognized where the record is ambiguous.

Under the Virginia statute, it is true whether to allow the jury to separate is a matter within the trial judge's discretion (Sec. 19.1–213 Code of Virginia (1950)). However, it is not to be presumed that the discretion is to be exercised in a vacuum. The fact that the Court consulted with counsel on the point is indicative of this. No decision made during the trial was more fateful to the defendant than this. If the allegations of the petition are found to be true then the question considered and decided in Near's absence had direct consequences gravely affecting his case.

■ Since Hopt v. Utah, supra, the Supreme Court has on a number of occasions been called upon to determine when, so far as the Fourteenth Amendment is concerned, the presence of the defendant is a requirement of due process. Here the conference involved more than a discussion of legal principles which the defendant could not be expected to understand or to contribute anything of value. Deschenes v. United States, 224 F.2d 688 (10 Cir., 1955). Nor was it simply the taking of a verdict as in Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). There can be no doubt that the petitioner's right to a fair and just hearing was thwarted if

the allegations of his petition are established. What occurred out of Near's presence was not a mere showing of the scene of the crime as in Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934).[1] There it was held that such a showing is not a part of the trial. But here a decision was taken out of the presence and without the knowledge of the defendant to surrender one of his fundamental rights. Moreover, as it turned out this was no inconsequential matter, for thereby the jurors were exposed to hostile influences. Strangers would not be permitted to make comments to the jury about the defendant in the courtroom; it is no less offensive to allow such comments to be made in the jurors' presence on the courthouse lawn. Absence from the conference cannot, in the light of later events, be dismissed as a mere technicality.

We are not here called upon to decide that the mere fact of the prisoner's absence from the conference—nothing else appearing—would of itself result in such an unfair and unjust trial as to violate the provisions of the Fourteenth Amendment, but this fact, combined with the allegations of serious consequences which are said to have flown from the decision, raise issues on the face of the petition which if true would entitle the petitioner to a new trial.

## II

Petitioner asserts as an independent second claim that his constitutionally guaranteed right to due process of the law was violated because of the prejudicial out of court statements made to, or within the hearing of, the jurors. The Virginia trial court on August 4th denied a motion for new trial pressed on this ground. The record contains no evidence that the court ruled on two later motions based on other evidence indicating that one juror engaged in conversations and heard a television newscast concerning the trial. The basis for the decision of the trial court in its ruling of August 4, 1959, does not appear in the record. The District Court, upon receipt of this petition for a Writ of Habeas Corpus, ordered a return by the Superintendent of the Virginia State Penitentiary. After receipt of the return, relying in part on the decision of the Virginia trial court, the District Court, without holding a hearing, refused to issue the writ.

The ultimate issue is, of course, whether the jury might reasonably have been so prejudiced by the alleged statements that retention of them as triers of fact

1. But see the dissenting opinion of Mr. Justice Roberts, concurred in by Justices Brandeis, Sutherland and Butler: " * * * Our traditions, the Bill of Rights of our federal and state constitutions, state legislation and the decisions of the courts of the nation and the states, unite in testimony that the privilege of the accused to be present throughout his trial is of the very essence of due process * * * But the privilege goes deeper than the mere opportunity to cross-examine, and secures his right to be present at every stage of the trial. The cases cited in the margin, while by no means exhausting the authorities, sufficiently illustrate and amply sustain the proposition that the right is fundamental and assures him who stands in jeopardy that he may in person, see, hear and know all that is placed before the tribunal having power by its finding to deprive him of liberty or life. * * * Nor ought this court to convert the inquiry from one as to the denial of the right into one as to the prejudice suffered by the denial. To pivot affirmance on the question of the amount of harm done the accused, is to beg the constitutional question involved. The very substance of the defendant's right is to be present. By hypothesis it is unfair to exclude him. * * * But where the conduct of a trial is involved, the guarantee of the Fourteenth Amendment is not that a just result shall have been obtained, but that the result, whatever it be, shall be reached in a fair way. Procedural due process has to do with the manner of the trial; dictates that in the conduct of judicial inquiry certain fundamental rules of fairness be observed; forbids the disregard of those rules, and is not satisfied, though the result is just, if the hearing was unfair. * * *"

violated petitioner's right to due process of the law.

Should it appear that prejudicial statements were made in the presence or hearing of the jurors, the court must reach its decision in the light of all of the surrounding circumstances, including that of the defendant's absence from the conference in which the decision was made to allow the jury to separate and mingle with the crowd. " * * * The presumption is always in favor of good character but the law concerning juries provides strictly that all jurors be secluded from outside influences and presumes that such influence may act upon some of them, and may act so as to be beyond detection. Jurors are human and not always conscious to what extent they are in fact biased or prejudiced and their inward sentiments cannot always be ascertained." Stone v. United States, 113 F.2d 70 (6 Cir., 1940). See also Mattox v. United States, 146 U.S. 140, at page 149, 13 S.Ct. 50, 36 L.Ed. 917: "It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment. Nor can any ground of suspicion that the administration of justice has been interfered with be tolerated."

We are also presented with the issue of upon which tribunal rests the responsibility for the determination of the ultimate issue, the question being what degree of reliance the District Court, in this petition for Habeas Corpus, may place on the decision of the state trial court.

■ In the case of Brown v. Allen, 344 U.S. 443, 497–513, 73 S.Ct. 397, 97 L.Ed. 469 (1953), Justice Frankfurter, with the concurrence of the majority of the Court as to this part of his opinion, set out guidelines for district courts in Habeas Corpus proceedings. The case of Davis v. North Carolina, 310 F.2d 904 (4 Cir., 1962), recently applied these rules. The decisions state that where a pure issue of historical fact is involved, the district court may rely heavily on the determination of the state court.

This is because of the superior opportunity of the trier of fact, in the light of all the evidence in the case, to make a correct judgment. But, as to mixed constitutional questions of law and fact, that is, issues as to which, on an assumed basis of historical fact, conclusions of a constitutional nature are to be drawn, the district court must make the determination. It cannot merely rely, without question, on the decision of the trial court.

■ The record before this court indicates that the Virginia trial court did not expressly state the findings upon which it denied the motion for a new trial. It may be that the judge based his decision on a finding that no statements were made within the hearing range of the jurors. It is also possible that his decision rests on a determination that although the jurors did overhear prejudicial statements, this was not sufficient to influence the jury, or he may have taken the view that as a matter of law this does not amount to a denial of due process. Only the first would be a finding of fact, the second raises a question of mixed law and fact, and is for the District Court to decide. The last is a pure question of law calling for the district court's independent decision without deferring to the state court. Where, as here, the decision of the state court on a constitutional issue is possibly based on a mixed question of law and fact, or solely upon a view of the law, and the state court gives no reason for its decision, and the claim of the petitioner is not frivolous or patently false, the district court cannot decide based solely on the opinion of the trial court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); United States ex rel. Sileo v. Martin, 269 F.2d 586 (2 Cir., 1959); Holly v. Smyth, 280 F.2d 536 (4 Cir., 1960); Davis v. North Carolina, supra.

■■ Subsequent to the judgment of August 4, 1959, two motions were made for new trial in the Virginia courts based on affidavits of several persons that, during an adjournment, they engaged in

conversation with one juror concerning the trial, and that they saw this juror watching a television newscast concerning the trial. The trial court made no ruling on these motions. The Supreme Court of Appeals of Virginia and the district court below agreed that no issue of merit was raised because the affidavits do not indicate the nature of the conversation or the newscast, and so do not show that the juror was in any way influenced. This is, however, the purpose of the hearing. The petitioner has alleged prejudice of a juror, and, at the hearing will have his opportunity to develop the fact. Where the petition for a Writ of Habeas Corpus states grounds that are not frivolous or patently false, the petitioner is entitled to a hearing. Commonwealth of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Reickauer v. Cunningham, 299 F.2d 170 (4 Cir., 1962).

As to those matters upon which a hearing was had by the state trial court, the district court may, in its discretion, rely on the transcript of the state court hearing, Brown v. Allen, supra, 344 U.S. at 503–504, 73 S.Ct. at 444; United States ex rel. Kassim v. Wilkins, 298 F.2d 479 (2 Cir., 1962). The same reliance may be placed upon counsels' agreement as to the substance of the testimony of all of the witnesses in the state hearing. It may, however, be necessary for the district court to take additional testimony as to the other issues raised.

The case is hereby remanded for further proceedings consistent with this opinion.

Remanded.

JOHN PAUL, District Judge (dissenting).

I am unable to agree with the action taken by the majority of this court. Its opinion appears to be based on the assumption that the allegations of the petition raise questions of fact which have not as yet been determined or even investigated. On the contrary, as I see it, every pertinent question raised by the petitioner has been the subject of careful consideration by the Virginia state courts, including the highest court of the state. The case has twice been to the Supreme Court of Appeals of Virginia, once upon the merits (202 Va. 20, 116 S.E.2d 85) and once upon a petition for a writ of habeas corpus. In the first of these proceedings the appellate court considered all of the complaints based on the fact that the jury was not sequestered during the trial; and the petition for habeas corpus later denied by the Virginia appellate court presented the same grounds as are alleged in the instant petition. In both instances the Supreme Court of the United States denied certiorari.

I would approve the action of the district court in refusing the writ.