Frank Hendrick DEWEASE, JR., Petitioner,

v.

J. D. COX, et al., Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 71–C–39–R.

United States District Court, W. D. Virginia, Roanoke Division.

April 30, 1971.

Vann H. Lefcoe, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus, filed in forma pauperis by Frank Hendrick Dewease, Jr., a state prisoner, pursuant to the provisions of 28 U.S.C. 2241 and 2254.

Petitioner is currently serving a sentence of twenty years pursuant to a judgment of the Circuit Court of Montgomery County, Virginia imposed on April 11, 1968 for second degree murder.

At the petitioner's trial, he was represented by court appointed counsel, entered a plea of not guilty and was tried and convicted by a jury.

Petitioner, assisted by court appointed counsel, sought and perfected an appeal to the Virginia Supreme Court of Appeals which refused his writ of error and supersedeas. Petitioner has also sought state habeas corpus relief on a variety of allegations. Petitioner's habeas corpus application was dismissed and relief denied by the Circuit Court of Montgomery County on the face of the petition and the transcript of the trial. No evidentiary hearing has been held in the state courts concerning the petitioner's allegations.

An appeal was taken from the trial court's denial of habeas corpus relief. The Virginia Supreme Court of Appeals, finding no reversible error, affirmed the judgment of the Circuit Court after an inspection of the petition and the trial transcript.

In the present federal habeas corpus petition, the petitioner alleges four separate instances of error committed by the state courts in which it is alleged his constitutional rights have been violated.

Petitioner states that his conviction cannot stand because the trial court allowed the striking for cause of certain members of the prospective jury panel because of their opposition to the imposition of the death penalty.

Petitioner also alleges that he was arrested in his own home without a warrant and without circumstances to justify such a warrantless arrest.

Petitioner's third claim of constitutional infringement is that he was entitled to a pre-trial psychiatric examination and that he was ignorant of such fact.

The final allegation made by the petitioner in the present action is that he was not present when his counsel, the prosecutor and the trial judge decided to allow the jurors to mingle with others during recesses, a decision which resulted in substantial prejudice to the petitioner in that the jurors received improper information during the recesses.

■ The petitioner's allegation of constitutional infirmity due to the exclusion of jurors opposed to capital punishment is without merit in the present case where the jury did not impose the death sentence. In fact, the petitioner was convicted of second degree murder for which the death penalty is wholly inapplicable in the Virginia courts. The Supreme Court has held in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. However, the Supreme Court in the same term of court more clearly defined the scope of the decision in *Witherspoon*. In Bumper v. North Carolina, 391 U.S. 543 at 545, 88 S.Ct. 1788 at 1790, 20 L.Ed.2d 797 the Supreme Court said,

Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment. The petitioner

argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491; Turner v. Louisiana, 379 U.S. 466, 471–473, 85 S.Ct. 546, 13 L.Ed.2d 424; Irvin v. Dowd, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 6 L.Ed.2d 751. We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon*. Accordingly, we decline to reverse the judgment of conviction upon this basis.

The present case is analogous to Bumper v. N. C., *supra*, but in this instance the petitioner has received a penalty of twenty years as opposed to the life term imposed in *Bumper*. Also, in the present case there is no allegation, much less proof, that such a jury would be so prosecution prone as to deny the petitioner his right to trial by an impartial jury.

The present situation also varies from the constitutional violative situation in *Witherspoon*. Here the jurors were excused only after they had affirmatively answered the trial judge's inquiry as to their opposition to the death penalty. This court is of the opinion that the trial judge's exclusion of the prospective jurors was proper since it was based upon his pointed inquiry:

Should the evidence and the law that the Court will give you establish beyond a reasonable doubt the charge of murder in the first degree, are either of you so opposed to capital punishment that you could not inflict it?

The Supreme Court in Witherspoon v. Illinois, *supra*, made it a special point

that the issue before it in that case did not,

\* \* \* involve the State's assertion of a right to exclude from the jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse to even consider its imposition in the case before them.

Thus, the present allegation of the petitioner is without merit as to the exclusion of jurors who were opposed to capital punishment. Not only did the petitioner not received the death penalty, but there was no proof and no allegation that such a jury deprived him of a right to a fair and impartial trier of fact. Furthermore, it appears from the trial transcript that the jurors who were excluded by the trial court could have been constitutionally excused even under the *Witherspoon* standard.

■ The petitioner's second contention, that his conviction cannot stand because he was arrested illegally, is entirely without merit. His allegation of prejudice resulting from statements made by him to the arresting officers is clearly contradicted by the trial transcript. Only one police officer testified at the petitioner's trial and he was not the arresting officer. He testified only as to his connection with the rescue squad in trying to revive the victim, Mrs. Ann Mae Dewease. No confession or damaging statements made to the arresting officer were ever offered in evidence to the detriment of the petitioner nor were the alleged damaging statements used to impeach the petitioner's testimony.

Assuming that the arrest of the petitioner in his own home without a warrant or necessitous circumstance did constitute an illegal arrest, this does not necessarily void a conviction, nor is it grounds for a collateral attack. The rule that an illegal arrest without more does not void a conviction and is not ground for a collateral attack by habeas corpus is well established whether the conviction was by a federal or state court, Moreland v. United States, 347 F. 2d 376 (10th Cir. 1965); Roddy v. United States, 296 F.2d 9 (10th Cir. 1961). United States ex rel. Burgett v. Wilkins, 283 F.2d 306 (2nd Cir. 1960), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed. 2d 812 (1961).

It has been pointed out that it does not matter how grossly illegal the arrest may have been. Even where it was assumed that a state prisoner had been made victim of a kidnapping by state officers in violation of the Federal Kidnapping Act in order to have him brought to trial for his crime, the Supreme Court of the United States affirmed the denial of a writ of habeas corpus in Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). The Supreme Court more fully explained the rationale at 522, 72 S.Ct. at 511–512,

This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' (Cited cases omitted). No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

In Ker v. Illinois, *supra*, at 440, 7 S. Ct. at 227, the Supreme Court said in regard to the "due process" guarantee of the Constitution,

The 'due process of law' here guaranteed is complied with when the party is regularly indicted by the proper grand jury in the state court, has a

trial according to the forms and modes prescribed for such trials, and when, in that trial and proceedings, he is deprived of no right to which he is lawfully entitled. * * * but, for mere irregularities in the manner in which he may be brought into custody of the law, we do not think he is entitled to say that he should not be tried at all for the crime with which he is charged in a regular indictment. * * * But it would hardly be claimed that, after the case had been investigated and the defendant held by the proper authorities to answer for the crime, he could plead that he was first arrested 'without due process of law.'

Thus, it can be clearly seen that the petitioner's arrest without a warrant by the local sheriff raises no federal question as to the constitutionality of the petitioner's conviction. He was convicted of the crime charged after a fair trial in accordance with constitutional procedural safeguards. An illegal arrest without more simply is not a valid reason to void a conviction otherwise properly rendered. The important point in this case which has been overlooked by the petitioner is that his conviction does not rest in any part on the proscribed arrest.

■ The third contention raised by the petitioner, that he was not informed of his right to a pre-trial psychiatric examination, does not raise a substantial federal question. The petitioner has cited no case and this court knows of no case which requires the accused to be advised of such an examination as a Constitutional mandate. It cannot be said that the state officer's failure to advise him of an examination which was not due could in any way offend either the "equal protection" or "due process" guarantees of the federal Constitution.

Virginia authorities have imposed no arbitrary conditions upon the accused in having his case heard fully and fairly before a jury of his peers. The right to be informed of the opportunity for a pre-trial psychiatric examination has not traditionally been regarded as an essential of "fundamental fairness". Its denial could not be construed as being so mainfestly "unfair" as to be a denial of due process of the law. This court is of the opinion that this contention contains none of the elements hitherto regarded as essential to justify action of this court under the Fourteenth Amendment.

■ The final contention of the petitioner is that he was not present at the time it was decided to allow the jurors to mingle with others during the recesses and that the jurors were exposed to prejudicial information during these periods. The petitioner relies on Near v. Cunningham, 313 F.2d 929 (4th Cir. 1963) to support his claim for relief. The Fourth Circuit held that the presence of the defendant was a requirement of due process in Near v. Cunningham, *supra*, since his right to a fair and just hearing was clearly thwarted if the petitioner's allegations were substantiated. The court explained its rationale as follows,

* * * But here a decision was taken out of the presence and without the knowledge of the defendant to surrender one of his fundamental rights. Moreover, as it turned out this was no inconsequential matter, for thereby the jurors were exposed to hostile influences. Strangers would not be permitted to make comments to the jury about the defendant in the courtroom; it is no less offensive to allow such comments to be made in the jurors' presence on the courthouse lawn. Absence from the conference cannot, in the light of later events, be dismissed as a mere technicality.

In the case before the court today, the first time that the petitioner ever alleged prejudice resulting from his not being present at such a conference was in his reply to the Virginia Attorney General's answer to his original petition in the federal courts. In all of his previous petitions and appeals to the state courts, the petitioner has never alleged

any prejudice resulting from his absence, but simply that he was not present when the decision was made. Thus, the state court's decisions have been properly based on the allegations put before them by the petitioner and were entirely consistent with the Fourth Circuit's reasoning in Near v. Cunningham, *supra,* at 932 when the court explained,

> We are not here called upon to decide that the mere fact of the prisoner's absence from the conference—nothing else appearing—would of itself result in such an unfair and unjust trial as to violate the provisions of the Fourteenth Amendment, but this fact, combined with the allegations of serious consequences which are said to have flown from the decision, raise issues on the face of the petition which if true would entitle the petitioner to a new trial.

The state courts have the primary responsibility for assuring the constitutionality of state trials and should be apprised of all allegations of error, before resort is had to the federal courts. As has been pointed out before, the state courts have properly dismissed the petitioner's writs as insufficient as a matter of law on the basis of the allegations they had before them. It is "unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation * * *." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 quoted with approval in Fay v. Noia, 372 U.S. 391, 420, 83 S. Ct. 822, 9 L.Ed.2d 837 and Ganger v. Peyton, 379 F.2d 709 (4th Cir. 1967).

This reasoning is particularly appropriate in this case since the issue presented to the appellate court in both the direct appeal and the appeal of the adverse habeas decision was entirely different from the issue the petitioner now advances. There is a world of difference in the mere absence from a conference and absence which results in preju-dice to the accused because of the jury's receiving illegal information. Thus, the petitioner's route for relief on this issue is not initially with this court, but in the state courts since he still has the available remedy of state habeas corpus. If petitioner so desires he should file a petition for such a writ in the state courts alleging *all* of the relevant facts. It is not proper for the petitioner to present one claim in the state courts and press yet another in the federal courts.

For the reasons discussed, the petition for a writ of habeas corpus is dismissed and relief is denied.

If the petitioner wishes to appeal this judgment or any part thereof, he should file with the clerk of *this* court within 30 days a notice of appeal. Failure to file notice of appeal within 30 days may result in a denial of the right of appeal. The notice of appeal shall state the following:

1. the judgment, order or part thereof appealed from;

2. the party or parties taking the appeal; and

3. the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.