### STATE v. ODIS MANNING.

(Filed 14 October, 1959.)

**1. Jury § 4: Criminal Law § 128: Homicide § 30—**

In a prosecution for murder in the first degree the solicitor may not, in the selection of the jury, state to prospective jurors that the sole purpose of the trial is to obtain the death penalty, and held further by a divided court that the solicitor may not state to prospective jurors that the State is seeking a verdict of guilty of murder in the first degree without recommendation of life imprisonment, since such statements violate the proviso of G.S. 14-17, giving the jury the unbridled discretion to recommend life imprisonment upon conviction of a defendant of the capital offense.

**2. Criminal Law § 163—**

The prejudicial effect of a statement of the solicitor, in selecting the jury, that the sole purpose of the trial is to obtain the death penalty against defendant, cannot be cured by a statement of the court that all prospective jurors should disabuse their minds in regard to the solicitor's remark, and certainly such error is not cured when the court thereafter overrules the objection to later statements to prospective jurors that the State is seeking the death penalty without recommendation of life imprisonment.

**3. Constitutional Law § 30: Criminal Law § 94—**

The trial court has the responsibility for enforcing the right of the defendant to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm.

1 — 251

STATE *v.* MANNING.

**4. Homicide § 28—**

Where any view of the evidence would justify a verdict of guilty of manslaughter it is incumbent upon the court to submit to the jury the question of defendant's guilt of this lesser degree of the crime.

HIGGINS, J., not sitting.

BOBBITT, J., concurring in result.

RODMAN, J., joins in concurring opinion.

PARKER, J., dissenting.

APPEAL by defendant from *Thompson, Special J.,* February-March, 1959 Term, of EDGECOMBE.

Criminal prosecution upon a bill of indictment charging defendant with the crime of murder in the first degree of one Isabella Gatling Manning.

Plea: Not guilty.

Upon the trial in Superior Court, as shown by the record, the list of regular jurors for the term first having been exhausted, the trial court ordered and had summoned a special venire of one hundred fifty, then a second of one hundred fifty and then a third of one hundred from whom jury of twelve jurors and two alternate jurors were selected, and impaneled to try the case against defendant Odis Manning.

And the case on appeal discloses that when the case came on for trial at the February-March Term of Superior Court for Edgecombe County, 1959, the following proceedings were had:

"During Examination of Prospective Jurors the following occurred:

"Upon the first prospective juror being sworn for questioning, Mr. Hubert E. May, Solicitor, read aloud that portion of G.S. 14-17 relating to murder in the first degree, including the proviso with reference to jury recommendations and said: 'Mr. (Juror's name), I am stating this to you and for all the other jurors to hear. As far as the State is concerned the sole and only purpose of this trial is to send the defendant, Odis Manning, to his death in the gas chamber in Raleigh, North Carolina.'

"Defendant objects— Sustained.

"The court instructed all the prospective jurors to disabuse their minds entirely of the statement, and to disregard it completely. The juror to whom the statement was specifically directed was not seated. The first three jurors seated came from the regular panel and therefore were present in court when the statement by Mr. May was made.

"Defendant moves that the entire panel be discharged. Denied. Defendant excepts. Exception #1.

"The Juror Phillips:

"By Mr. Bridgers: The State will request a verdict of murder in the first degree without a recommendation for life imprisonment.

"Defendant objects— Overruled— Defendant Excepts. Exception # 2.

"The Juror O'Neal:

"By Mr. May: I guess you know the State is seeking to convict this defendant of murder in the first degree without any recommendation for life imprisonment? Defendant objects— Overruled— Defendant excepts. Exception # 3.

"The Juror Wilson:

"By Mr. Bridgers: The State is seeking a verdict in this case of guilty of murder in the first degree without recommendation for life imprisonment. Defendant objects— Overruled— Defendant excepts. Exception # 4.

"The Juror Mrs. Felton:

"By Mr. May: The defendant is indicted under the following statute (reads that portion of G.S. 14-17 relating to murder in the first degree, including the proviso with reference to jury recommendation). The State in this case is seeking a verdict of murder in the first degree without any recommendation of life imprisonment. Defendant objects— Overruled— Defendant excepts. Exception # 5.

"The Juror Howard:

"By Mr. Bridgers: The State is seeking a verdict of guilty of murder in the first degree without any recommendation of life imprisonment. Defendant objects— Overruled— Defendant excepts. Exception # 6."

And further upon the trial in Superior Court as shown by record of case on appeal the State and the defendant offered evidence, and the case was submitted to the jury under the charge of the court.

Verdict: That the defendant is guilty of murder in the first degree.

Judgment: Death by inhalation of lethal gas as provided by law.

Defendant excepts and gives notice of appeal, appeals to Supreme Court and assigns error, and is permitted to appeal without making bond, that is, in *forma pauperis,*—the County of Edgecombe to pay costs incident thereto.

*Attorney General Seawell, Assistant Attorney General Love for the State.*

*Cameron S. Weeks, T. Chandler Muse for defendant, appellant.*

WINBORNE, C. J.   For error in the course of the trial of this case in Superior Court as revealed on the face of the case on appeal indicated by exceptions Numbers 1 to 6, both inclusive, on which assignments of error of like numbers are predicated, this Court is, in the light of the statute G.S. 14-17 as interpreted and applied in repeated decisions of the Court, impelled to order a new trial.

In this connection the statute, G.S. 14-17, as amended by the General Assembly of North Carolina, Section 1 of Chapter 299 of 1949 Session Laws of North Carolina, provides that "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury. All other kinds of murder shall be deemed murder in the second degree, and shall be punished" etc.

The proviso embraces the 1949 amendment, and has been the subject of discussion in several cases— S. v. McMillan, 233 N.C. 630, 65 S.E. 2d, 212; S. v. Marsh, 234 N.C. 101, 66 S.E. 2d 684; S. v. Simmons, 234 N.C. 290, 66 S.E. 2d 897; s.c. 236 N.C. 340, 72 S.E. 2d 743; S. v. Dockery, 238 N.C. 222, 77 S.E. 2d 664; S. v. Conner, 241 N.C. 468, 85 S.E. 2d 584; S. v. Carter, 243 N.C. 106, 89 S.E. 2d 789; S. v. Adams, 243 N.C. 290, 90 S.E. 2d 383; S. v. Cook, 245 N.C. 610, 96 S.E. 2d 842; S. v. Denny, 249 N.C. 113, 105 S.E. 2d 446; S. v. Oakes, 249 N.C. 282, 106 S.E. 2d 206; S. v. Pugh, 250 N.C. 278, 108 S.E. 2d 649, and perhaps others.

As interpreted in the McMillan case, above cited, decided in May 1951, this Court, speaking of the proviso embraced in the 1949 amendment, had this to say: "The language of this amendment stands in bold relief. It is plain and free from ambiguity and expresses a single, definite and sensible meaning,— a meaning which under the settled law of this State is conclusively presumed to be the one intended by the Legislature." (citing cases) And, continuing, the Court declared: "It is patent that the sole purpose of the act is to give to the jury in all cases where a verdict of guilty of murder in the first degree shall have been reached, the right to recommend that the punishment for the crime shall be imprisonment for life in the State's prison * * * No conditions are attached to, and no qualifications or limitations are imposed upon, the right of the jury to so recommend. It is un-

bridled discretionary right. And it is incumbent upon the court to so instruct the jury. In this, the defendant has a substantive right. Therefore, any instruction, charge or suggestion as to the causes for which the jury could or ought to recommend is error sufficient to set aside a verdict where no recommendation is made. And new trials have been granted from time to time in case after case as above enumerated— for violations of the terms of the proviso in G.S. 14-17.

Applying these principles to the subject matter of exceptions Numbers 1 to 6, both inclusive, hereinabove set forth, it is manifest that the terms of the proviso set out in G.S. 14-17 have been violated and the rights of defendant impinged. True the trial judge did what he could to counteract the harmful result of the remarks of the Solicitor. But as stated by this Court in *S. v. Canipe,* 240 N.C. 60, 81 S.E. 2d 173, in opinion by *Ervin, J.,* when such occurs, "it is virtually impossible for the judge to remove the prejudicial impression from the minds of the trial jurors by anything which he may afterwards say to them by way of atonement or explanation," citing cases.

Where, however, the harm is done the court may not eradicate the wrong. Such is the case in hand in respect to the first assignment of error. Moreover it is seen that in regard to the matters to which assignments of error Nos. 2 to 6, both inclusive, relate, the trial court overruled the objections of defendant and permitted the Solicitor to tell the prospective jurors the State was seeking a verdict of guilty of murder in the first degree without recommendation for life imprisonment,— a manifest violation of the provisions of the proviso in G.S. 14-17.

"Every person charged with crime has an absolute right to a fair trial. By this is meant that he is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm * * * The responsibility for enforcing this right necessarily rests upon the trial judge." *S. v. Carter,* 233 N.C. 581, 65 S.E. 2d 9.

Furthermore defendant assigned as error the refusal of the trial court to instruct the jury concerning the law of manslaughter and the circumstances in the case under which the jury would be permitted to return a verdict of manslaughter. Assignment of error # 23. Exception No. 45. In respect to this contention this Court is of opinion that the fact that defendant and his wife were together in the woods 10 minutes (R. p. 32), as the State's evidence tends to show, before any shots were heard is a circumstance that requires a charge on manslaughter.

The evidence discloses that there were no eye witnesses to the shooting, and no one of the State's witnesses knows what actually took place on this occasion. It rests in speculation.

The matters to which other assignments of error relate may not recur on a new trial. Hence it is not deemed necessary that they be treated on this appeal.

There must be a
New trial.

HIGGINS, J., not sitting.

BOBBITT, J., concurring in result. In my opinion, a new trial should be awarded on either or both of two grounds, *viz.*:

1. Defendant, in his testimony, denied that he intended to kill his wife and disavowed knowledge that he had done so. In short, there was no admission that defendant intentionally shot his wife and thereby caused her death. Under these circumstances, the court erred in excluding from jury consideration whether defendant was guilty of manslaughter.

2. The solicitor's statement, to which Exception 1 relates, was of such nature that the court's instruction could not and did not cure the prejudicial effect thereof. Had the defendant tendered, and had the solicitor or the court refused, a plea of guilty of murder in the first degree? If such plea had been tendered and accepted, with the court's approval, the punishment would have been life imprisonment. G.S. 15-162.1. The statement that the "sole and only purpose of this trial" was to determine whether defendant should die in the gas chamber would be true only if such plea had been tendered and refused. Hence, the solicitor's statement would seem to imply that defendant had tendered a plea of guilty of murder in the first degree. G.S. 15-162.1 provides: "Upon rejection of such plea, the trial shall be upon the defendant's plea of not guilty, and such tender shall have no legal significance whatever."

It was permissible, in my opinion, for the solicitor to state to prospective jurors that the State sought a verdict of guilty of murder in the first degree without a recommendation by the jury that the punishment be imprisonment for life and that, if such verdict were returned, the punishment under G.S. 14-17 would be death.

I do not understand that any of the members of this Court entertain the opinion that the General Assembly, by the enactment of G.S. 14-17, intended to abolish capital punishment. Nor has it been stated or suggested that the State may not challenge a prospective juror *for cause* if he declares on *voir dire* that he has conscientious

scruples against capital punishment, that is, that he could not in good conscience under any circumstances return a verdict on which the court would be legally required to pronounce a death sentence.

It would seem that a challenge *for cause* on the ground indicated would clearly imply that the State contended that the verdict should be a verdict requiring imposition of the death penalty.

After the jury has been selected and impaneled: If it finds the defendant guilty of murder in the first degree, whether it will add to the verdict the recommendation that the punishment be imprisonment for life rests entirely within the discretion of the jury. The jury's discretion is "absolute" and "unbridled" in the sense that there is *no rule of law* by which the jury is to be guided in making this decision.

While the jury's *power of decision* is "absolute" or "unbridled," it does not follow that the State's counsel and the defense counsel may not submit their respective contentions for jury consideration.

While still of the opinion that a new trial was properly awarded in *S. v. Oakes,* 249 N.C. 282, 106 S.E. 2d 206, on the other grounds set forth in the opinion, I am convinced that we went too far in holding erroneous the trial court's statement (without elaboration) that the State contended the jury should return a verdict of guilty of murder in the first degree without a recommendation that the punishment be imprisonment for life.

As to *S. v. Pugh,* 250 N.C. 278, 108 S.E. 2d 649, I take a different view. There the presiding judge undertook to review the respective contentions of the State and of the defendant as to *why* the jury, if they found the defendant guilty of murder in the first degree, should not or should recommend life imprisonment. The function of the presiding judge is to declare and explain *the law* arising on the evidence given in the case. G.S. 1-180. In my opinion, it is no part of his function or duty to discuss or review the respective contentions as to a matter not governed by any rule of law but resting wholly within the discretion of the jury. In short, I think it permissible for the court to state *the ultimate contentions* of the State and of the defendant, namely, the simple statement that the State contends the jury should not, and the defendant contends the jury should, recommend life imprisonment, but that it is not permissible for the court to discuss or review the various reasons or arguments submitted by the State's counsel or by the defendant's counsel in support of their respective ultimate contentions.

RODMAN, J., joins in this opinion.

PARKER, J., dissenting. I do not agree with the majority opinion, which holds that when the solicitor for the state put the defendant on trial for a capital offense, it is error for him to state to a prospective juror on the *voir dire* that the state is seeking a verdict of guilty of murder in the first degree without a recommendation by the jury of imprisonment for life, and, in my opinion, such a holding is not warranted by the language of the proviso appearing in G.S. 14-17.

G.S. 14-17 reads:

"Murder in the first and second degree defined; punishment...... A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury. All other kinds of murder shall be deemed murder in the second degree, and shall be punished with imprisonment of not less than two nor more than thirty years in the State's prison."

The Court held in *S. v. Denny*, 249 N.C. 113, 105 S.E. 2d 446, that this proviso does not create a separate crime. Therefore, the three separate crimes of unlawful homicide in North Carolina are murder in the first degree, murder in the second degree, and manslaughter. G.S. 14-17 and G.S. 14-18.

This Court has held in many decisions that if a jury convicts a defendant of a capital offense, it has absolute discretion by virtue of the proviso in G.S. 14-17 to make a recommendation of life imprisonment, and if it does, the mandatory judgment of the court shall be imprisonment for life. *S. v. McMillan*, 233 N.C. 630, 65 S.E. 2d 212; *S. v. Denny, supra*, and the cases there cited. If the jury convicts of a capital offense, and makes no recommendation, G.S. 14-17 provides a mandatory death sentence. *S. v. Bass*, 249 N.C. 209, 105 S.E. 2d 645; *S. v. Bunton*, 247 N.C. 510, 101 S.E. 2d 454.

It is crystal clear from the language of G.S. 14-17 that the General Assembly has not abolished, and did not intend to abolish, capital punishment in North Carolina, and the Court has so held in the recent cases of *Bass* (1958) and *Bunton* (1957). It is perfectly plain to me that all the General Assembly did, and intended

to do, by the enactment of this proviso was to give the jury, if it convicted of a capital offense, the absolute power to recommend imprisonment for life, and if it did so recommend, to make the punishment imprisonment for life.

As the General Assembly has not abolished capital punishment in North Carolina, the solicitor, a constitutional officer representing the state, has the absolute right to place a person indicted by the grand jury for a capital offense on trial for his life, and to say to a prospective juror on the *voir dire* that the state is asking for the death penalty, and nothing in the language of the proviso appearing in G.S. 14-17 makes it improper or error for him to do so. I know of no decision in our reports that holds to the contrary. Does the majority opinion intimate that in selecting the jurors in a capital case, it is error for the solicitor to ask a juror on the *voir dire* if he has conscientious scruples against capital punishment?

This Court in *S. v. Oakes,* 249 N.C. 282, 106 S.E. 2d 206, (decided at the Fall Term 1958), and in *S. v. Pugh,* 250 N.C. 278, (decided at the Spring Term 1959 with two Justices dissenting), held that it is error for the trial judge to state to the jury that the state contends that the jury should convict of the capital offense, and not recommend imprisonment for life. To keep the record accurate, I did not participate in the decision in the *Oakes* case, as I was absent from Court due to illness. It seems to me that the necessary inference to be drawn from the *Oakes* and *Pugh* cases is that a majority of the Court is of opinion that by reason of the proviso in G.S. 14-17 it is error for the solicitor to argue to the jury that the state is asking for a verdict of guilty of the capital offense, and that the jury should not exercise its absolute right to recommend imprisonment for life, though it has not decided that exact question. In my judgment, the proviso in G.S. 14-17 does not warrant such an opinion.

Unquestionably counsel for a defendant on trial for a capital offense has the absolute right to argue to the jury that if it convicts of a capital offense, it should exercise its unqualified right to recommend imprisonment for life, and every trial judge knows that counsel for the defendant will so argue with all the eloquence and power he has. If it is error for the solicitor to state to a prospective juror that the state is asking for the death penalty, and to argue to the jury in reply to defendant counsel's argument that the jury should convict of the capital offense, and not exercise its unqualified right to recommend imprisonment for life, capital punishment

will be to a large extent, if not almost completely, abolished in North Carolina. The *Bass* and *Bunton* cases were tried in the Superior Court prior to the decisions in the *Oakes* and *Pugh* cases.

If a jury convicts a defendant of a crime and the trial judge has discretion as to the punishment, it is ordinarily no concern of the solicitor as to the punishment to be inflicted. But that is not the case here. If the jury convicts of a capital case and makes no recommendation, the mandatory sentence by virtue of G.S. 14-17 is death; and if the jury convicts of the capital offense and recommends imprisonment for life, the mandatory sentence by virtue of the same statute is life imprisonment. Under such circumstances the punishment is fixed by the General Assembly, and neither the judge nor the solicitor can change it.

*S. v. Dockery*, 238 N.C. 222, 77 S.E. 2d 664, is not in point. In that case counsel for the private prosecution argued to the jury: "There is no such thing as life imprisonment in North Carolina today." Such an argument of matter *dehors* the record was properly held as error. To the same effect *S. v. Little*, 228 N.C. 417, 45 S.E. 2d 542; *S. v. Hawley*, 229 N.C. 167, 48 S.E. 2d 35.

If the General Assembly had intended by the proviso in G.S. 14-17 to prevent the solicitor from announcing to prospective jurors that the state would ask for the death penalty, and from arguing to the jury that the state contends that the jury should convict of the capital offense and not exercise its unqualified right to recommend imprisonment for life, it would have said so in plain language in the proviso of G.S. 14-17. This it has not done.

If capital punishment is to be practically abolished in North Carolina, it should be done by the General Assembly, and not by this Court, by what I am thoroughly convinced is an erroneous interpretation of the meaning of the proviso in G.S. 14-17 in the instant case and in the *Oakes* and *Pugh* cases, cases decided within the past twelve months, and which go a long bow shot further than all of our other decisions in reference to this proviso.