**Mellott FAUST, Appellant,**

v.

**STATE OF NORTH CAROLINA,**
**Appellee.**

**No. 8622.**

United States Court of Appeals
Fourth Circuit.

Argued June 7, 1962.

Decided Sept. 6, 1962.

Charles V. Bell, Charlotte, N. C. (Peter H. Bell, Plymouth, N. C., on brief), for appellant.

Harry W. McGalliard, Asst. Atty. Gen. of North Carolina (T. W. Bruton, Atty. Gen. of North Carolina, on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and CRAVEN, District Judge.

CRAVEN, District Judge.

Appellant is now confined in the state penitentiary at Raleigh, North Carolina under sentence of death. He prosecutes this appeal from the District Court's denial of his petition for habeas corpus.

On the 21st day of May, 1960, Appellant was one of a crowd of people who gathered near the corner of Gold and Summit Streets in the city of Charlotte. Two cousins, John and Charles Smith, had been engaged in a fight and had attracted the attention of two Charlotte city policemen, Officer Bruce and the deceased, Officer Annas. These officers were attempting to arrest both Smiths and were having some difficulty in accomplishing their purpose. Officer Annas went to the patrol car to radio for additional help and then turned from the car to go to the assistance of Officer Bruce who was being harassed by members of the crowd who were attempting to prevent the arrest of the Smiths. The Appellant Faust snatched Bruce's pistol out of his holster and shot Annas. The evidence does not disclose that Appellant was related by blood or marriage to either of the persons being arrested by the officers. He was not a participant in the events immediately preceding the shooting. In other aspects the evidence was sharply conflicting.

The State offered evidence which, if believed by the jury, tended to show that Appellant first shot the deceased Officer Annas at a distance of about fifteen feet and then walked around his fallen body and fired five more shots into the prostrate officer. Whether Officer Annas had his gun in his hand or in his holster was sharply disputed. Officer Bruce testified that Officer Annas was running with the gun in his hand. At least one other witness, other than the defendant, corroborated Bruce on this important point, but there was testimony from which a jury could have concluded that Annas' pistol was in its holster at the time he was shot. For a more complete statement of the evidence see State of North Carolina v. Faust, 254 N.C. 101, 118 S.E.2d 769 (1961).

Appellant was tried in the Superior Court of Mecklenburg County at the June 20, 1960 criminal term. The jury returned a verdict of guilty of murder in the first degree without a recommendation of "mercy", i. e., without recommending that the punishment be that of life imprisonment in the state penitentiary. Under North Carolina law if a jury fails to so recommend in the trial of a capital case the death penalty is mandatory. The Appellant was thereupon sentenced to death by inhalation of lethal gas as required by the law of North Carolina. From this judgment and sentence he appealed to the Supreme Court of North Carolina and raised in that court several questions, one of which he attempts to raise here. The Supreme Court of North Carolina carefully con-

sidered all of Appellant's assignments of error and affirmed the conviction. Appellant filed a petition for certiorari in the United States Supreme Court, which petition was denied, 368 U.S. 851, 82 S.Ct. 85, 7 L.Ed.2d 49. He thereafter filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of North Carolina. Judge Larkins of the Eastern District of North Carolina afforded the Appellant a hearing. It was agreed by his counsel that his presence at the hearing was unnecessary, and his right, if any, to be present was waived. His petition for a writ of habeas corpus was denied, and he appealed.

Appellant presents this court only one question:

"Is the conviction of (Appellant) on the charge of murder in the first degree so devoid of evidentiary support as to constitute a denial of his right under the Due Process of Law Clause of the Fourteenth Amendment to the Constitution of the United States?"

The answer to that question is: No.

■■ Appellant contends that all of the evidence tends to show that he acted under the influence of passion suddenly aroused, while violent passion had dethroned his reason, and not in a cool state of blood. The North Carolina Supreme Court carefully considered this contention and concluded that passion does not always reduce the crime since a man may deliberate, may premeditate, and may intend to kill after deliberation and premeditation although prompted, and to a large extent controlled, by passion at the time, citing 40 C.J.S. Homicide § 33d, pp. 889, 890. Another facet of the same problem in cases such as this is whether or not enough time elapsed to permit deliberation and premeditation. Although the design to kill must have existed for some appreciable period of time before the commission of the homicidal act, the law does not undertake to state any limit to the time which must elapse between the formation of an intent to kill and its consummation in the homicide. No particular period of time is essential to premeditation and deliberation. 26 Am. Jur., Homicide, § 42, pp. 186, 187.

■■ The Assistant Attorney General of the state of North Carolina in oral argument to this court, with commendable candor, admitted to some misgivings as to the elements of premeditation and deliberation in this case. Certainly it cannot be denied that all of the evidence showed that Appellant acted passionately and quickly. We express no opinion as to the state court's resolution of these questions. Even if we were to disagree, we could not intervene by habeas corpus when the alleged error is of a character that cannot reasonably be said to involve a deprivation of constitutional rights. Normally the sufficiency of evidence and instructions to juries in state trials are matters of state law not involving federal constitutional issues. As Chief Judge Sobeloff said in Grundler v. State of North Carolina, 4 Cir., 283 F.2d 798, 802: "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal."

The question presented is a question of the state law of homicide, and however difficult it may be to resolve in terms of logic, it is a matter for state determination. In the context of the trial we find no indication of fundamental unfairness.

Appellant argues that this case is governed by Thompson v. City of Louisville, 1960, 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 and Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207. In these cases the Supreme Court held it a denial of due process for a state to convict someone upon *no* evidence of guilt. In Thompson the Court said:

"Thus we find no evidence whatever in the record to support these convictions. Just as 'Conviction upon a charge not made would be sheer

denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt."

 There is a difference between a conviction based upon evidence deemed insufficient as a matter of state criminal law and one so totally devoid of evidentiary support as to raise a due process issue. It is only in the latter situation that there has been a violation of the Fourteenth Amendment, affording the state prisoner a remedy in a federal court on a writ of habeas corpus. Grundler v. State of North Carolina, 4 Cir., 283 F.2d 798, 801 (1960).

At common law there were no degrees of murder. The death penalty fell alike upon the murderer who deliberated and premeditated and the one who did not. Not until more enlightened times was any legal distinction made with resultant variations in punishment. Perhaps because of growing dissatisfaction with capital punishment, North Carolina has ameliorated the harshness of the common law. Homicide is divided into three grades. The trial judge and the Solicitor are empowered, if they both agree, to permit one charged with first degree murder to plead guilty and accept a sentence of life imprisonment. In addition, trial juries have been given unbridled discretion to mitigate the death penalty to life imprisonment.

As a result, only a few persons guilty of murder in the first degree are put to death; the majority are sentenced to life imprisonment. This is the ultimate in disparity of punishment; particularly so, since under North Carolina law one serving a life term is eligible for parole after ten years. This disparity is deeply disturbing to both proponents and opponents of capital punishment.

Be that as it may, the jury in this case was not disposed to extend mercy to the Appellant. This court is not empowered to do so.

The District Court's order is

Affirmed.