Robert Lee CASE, Appellant,

v.

STATE OF NORTH CAROLINA,
Appellee.

No. 8768.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 17, 1963.

Decided March 25, 1963.

Sherwood H. Smith, Jr., Raleigh, N. C., and L. Lyndon Hobbs, Shelby, N. C., for appellant.

Harry W. McGalliard, Asst. Atty. Gen. of North Carolina (T. W. Bruton, Atty. Gen. of North Carolina, on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and CRAVEN, District Judge.

J. SPENCER BELL, Circuit Judge.

The petitioner, Robert Lee Case, was convicted of the capital crime of rape, without recommendation of life imprisonment by the jury, and a mandatory sentence of death was pronounced by the state court.[1] The judgment was affirmed by the Supreme Court of North Carolina, State v. Case, 253 N.C. 130, 116 S.E.2d 429 (1960), and petition for certiorari denied by the Supreme Court of the United States, Case v. North Carolina, 365 U.S. 830, 81 S.Ct. 717, 5 L.Ed. 2d 707 (1961). Post-conviction proceedings were instituted in the state courts, and after hearing, the court made findings of fact upon which it concluded as a matter of law that Case had suffered no substantial deprivation of his constitutional rights in his original trial, and denied relief. On the basis of this record, the District Court denied petitioner's application for a writ of habeas corpus.

The petition alleges that Case was denied the effective assistance of counsel during his trial because of a conflict of interest resulting from his counsel's duty both to him and to his co-defendant Shedd, by whom the attorney was also retained. We agree with the District Court that the post-conviction hearing conducted by the state court obviated the necessity of holding a plenary hearing

1. Under North Carolina law the jury had the right to recommend life imprisonment, which recommendation is mandatory on the judge. N.C.Gen.Stat. § 14–21. The North Carolina Supreme Court has held that this act attaches no limitation, conditions or qualifications to the jury's right to so recommend, and nei-

ther the court nor counsel for the state may argue to the jury that it should not exercise its unbridled discretion in making this recommendation. State v. Manning, 251 N.C. 1, 110 S.E.2d 474 (1959); State v. Manning, 251 N.C. 1, 110 S.E.2d 474 (1959); State v. McMillan, 233 N.C. 630, 65 S.E.2d 212 (1951).

in the District Court.[2] The findings of historical fact are supported by the evidence, indeed there was little or no conflict in this area; it is with the conclusions of law drawn therefrom that we must differ.

The petitioner Case and his co-defendant Shedd were indicted and tried jointly for the capital offense of rape. Both were found guilty; the jury recommended mercy and life imprisonment for Shedd, but no such recommendation was made with respect to Case, and thus, for him, the death penalty was mandatory. Both Case and Shedd employed the same attorney; shortly before trial Shedd's family employed additional counsel for him, but the only counsel which Case had during his trial and appeal also represented Shedd. Before trial, both defendants were given psychiatric examinations at the state hospital for the insane. The doctors testified that Case's I.Q. was about eighty, which was considered "dull but normal intelligence"; however, Shedd had an I.Q. of about fifty and was classified as moronic. Case was Shedd's uncle, and considerably older. He had a criminal record.

When the trial commenced, the Court asked if there were any preliminary motions, whereupon petitioner's counsel moved for a severance, explaining that he represented both defendants and that he was fairly certain that a conflict would arise between their interests upon certain evidence which he felt sure would be offered by the state and which would be favorable to one and unfavorable to the other, thus putting him in a "difficult position". The Court overruled the motion and then directed that petitioner's attorney should cross-examine on behalf of the petitioner while Shedd's additional counsel should cross-examine for Shedd. Petitioner's attorney was never relieved either in fact or on the record of his representation of Shedd, nor did he contend such was the fact at the state post-

conviction hearing, nor is there any evidence that he returned Shedd's fee. In fact, when the petitioner here attacks his attorney's conduct in leaving the courtroom during the judge's charge and the state's arguments to the jury, the state defends such conduct on the grounds that each of the defense lawyers was watching out for the interests of both defendants. Nor can we accept the argument that the court's act in allocating the cross-examination of witnesses between the two defense attorneys relieved petitioner's counsel of his basic conflict of interest as regards Case. This conflict of interest was present at every stage of the trial, in the preliminary decision on the nature of Shedd's defense tactics, during the testimony of the prosecutrix and other state's witnesses, the charge to the jury, and the argument of counsel. Every incident which emphasized Shedd's defense drew the noose tighter about his co-defendant's neck. We do not need the verdict of the jury to prove this. We would even concede that Case may well receive the same verdict in a separate trial, but we must not attempt to measure the degree of injury. The conflict of interest is inherent in the case, but it is fixed beyond a doubt by the jury's unbridled discretion to give life or death to the two defendants.

In Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), a state conviction was reversed on the grounds that denial of the effective assistance of counsel in capital cases was failure of due process under the Fourteenth Amendment of the Constitution. The remedy is available under habeas corpus Holly v. Smyth, 280 F.2d 536 (4 Cir., 1960), where this Court said:

> "The interests of the several defendants might actually have conflicted. If the attorney was present to aid the others, one trial tactic which could benefit them would be to show that Holly was chiefly re-

2. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), but Brown v. Allen in no way relaxes the duty of the Federal Court to make its own constitu-

tional determination. Holly v. Smyth, 280 F.2d 536, 543 (4 Cir., 1960); United States ex rel. Sileo v. Martin, 269 F.2d 586 (2 Cir., 1959).

sponsible for the crimes. In fact, the more severe treatment accorded Holly suggests this possibility." 280 F.2d at 542.

While we need not attempt to measure. the extent of the injury, we would point out that petitioner's counsel sat silent while the psychiatrist who had examined Shedd detailed Shedd's confession, which not only implicated the petitioner but threw on him the onus of leadership in the outrageous conduct of the two.[3] Again he was silent when private prosecution used violent and inflammatory language in its summation to the jury, referring to the petitioner as a "mad dog", an "animal", and a "convict". As counsel for Shedd, he could view all the emphasis placed on Case's conduct as tending to remove the onus from his client.

Other errors are alleged in petitioner's attempt to show that his counsel was ineffective and inadequate, but we see no point in reviewing these. We must hold that the Trial Court's failure to recognize the inherent and basic conflict of interest which faced counsel for the petitioner and for that reason permit severance was fatal error in that it denied to petitioner the effective assistance and the undivided loyalty of his counsel during his trial upon a capital offense.[4] This being true the case must be remanded to the District Court with instructions to free the petitioner unless the state will retry him within a reasonable time.

Remanded.

3. On the direct appeal, the Supreme Court of North Carolina said with respect to this testimony: "Where testimony incompetent as to one defendant is admitted without objection and without request that its admission be limited, an exception thereto will not be sustained. * * * It would have been error to admit Shedd's statement or statements against Case, had he requested that they be limited as against Shedd only." 116 S.E.2d at 434.

4. We think the Supreme Court spoke with impelling force to this very point when it said:

CRAVEN, District Judge (dissenting).

This case serves to further convince me that the price society pays for capital punishment is much more than it is worth. See Faust v. N. C., 307 F.2d 869 (4th Cir., 1962). This time the price is exacted in the coin of disruption in the still sensitive area of federal—state relations. See: Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441 (1963).

Neither Shedd nor Case offered any legal defense worthy of the designation; the battle was joined over punishment (life imprisonment or death) rather than guilt or innocence.

Case selected and employed his own lawyer and did so knowing that the same lawyer had previously been employed by Shedd. He now urges successfully that his choice was not only unwise but also unconstitutional in view of the joint trial. His complaint comes to this: that because he was the older and more intelligent of the two defendants, as well as being the uncle of his co-defendant, the impression may have been created in the minds of the jury that he was more blameworthy than the younger and moronic Shedd, and that his lawyer was not free to combat this impression (if, indeed, he could) without harming Shedd, whom he also represented.

The alleged conflict of interest relates solely to the relative blameworthiness of the co-defendants. No other conflict of interest is suggested or briefed.

" * * * of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court." Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1941).

Whenever two or more persons are on trial for the same crime there is always the problem of relative blameworthiness. This is so because punishment no longer is said to fit the crime but, instead, is designed to fit the individual malefactor —and no two can be exactly alike.

If there be an inherent conflict of interest, as the court says, it would appear to be inherent in all cases of multiple defendants represented in the same trial by the same lawyer.

If I understand the majority opinion, it means that henceforth multiple defendants charged with a capital crime may compel separate trials by the simple device of choosing the same lawyer.

The awful finality of death may well justify the result. I am unable to agree that the Constitution requires it.