STATE OF NORTH CAROLINA v. PHILLIP THOMAS ROBBINS, JR.

No. 60A83

(Filed 6 December 1983)

**1. Homicide § 21.7— second degree murder—sufficiency of evidence**

The State's evidence was sufficient to support a jury finding that defendant intentionally assaulted the victim with a deadly weapon and thereby proximately caused her death so as to support conviction of defendant of second degree murder where it tended to show that defendant threatened one of the victim's daughters and also stole a gun one week prior to the incident in question; defendant inexplicably arrived at the victim's workplace and drove away with her; the two were seen parked on a dirt road later that night fighting; the victim screamed for help just before falling out of the car; the victim had been shot three times at close range, with one defensive-type gunshot wound in her hand; the victim died as a result of multiple gunshot wounds inflicted by the same gun stolen by defendant; and when asked who had done this to her, the victim mumbled a name which sounded much like defendant's.

**2. Homicide § 14.4— reducing second degree murder to voluntary manslaughter —burden on defendant**

In order for an accused to reduce the crime of second degree murder to voluntary manslaughter, he must rely on evidence presented by the State or assume a burden to go forward with or produce some evidence of all elements of heat of passion on sudden provocation. In order to do this, defendant in the instant case must have shown (1) that he shot the victim in the heat of passion, (2) that this passion was provoked by the acts of the victim which the law regards as adequate provocation, and (3) that the shooting took place so soon after the provocation that the passion of a person of average mind and disposition would not have cooled.

**3. Homicide § 27.1— failure to instruct on voluntary manslaughter—no error**

The trial court in a murder prosecution did not err in failing to instruct on the lesser included offense of voluntary manslaughter where the State's evidence tended to show that defendant intentionally shot the victim with a pistol, that two passersby observed smoke coming from the automobile occupied by defendant and the victim, that the occupants were subsequently observed fighting, and that guns of the type used could produce clouds of smoke, but there was no evidence that the fight was provoked by the victim, which person was the aggressor in the fight, or that the fighting occurred prior to or during the shooting.

**4. Homicide § 27.2— insufficient evidence of involuntary manslaughter**

The State's evidence in a murder case did not permit the jury to infer that there was no intentional discharge of defendant's weapon so as to require the trial court to submit involuntary manslaughter as a possible verdict where it tended to show that one week prior to the shooting, defendant had quarreled with members of the victim's family, had threatened "to get" one of them and had stolen a gun; during a scuffle between defendant and the victim in an automobile, the victim screamed for help, and afterwards as she lay on the road, she indicated that someone was responsible for the wounds and mumbled a name which sounded much like defendant's; and the victim was shot three times.

APPEAL by defendant from the judgment of *Lee, Judge,* entered at the 8 November 1982 Session of ORANGE County Superior Court.

Defendant was charged in an indictment, proper in form, with the first-degree murder of Annie Bernice Fuller Carroway. Defendant entered a plea of not guilty to the charge.

At trial, the State's evidence tended to show the following:

At about 3:00 p.m. on 21 June 1982, Annie Bernice Fuller Carroway was seen getting into her yellow 1974 Buick preparing to leave Cone Mills where she worked first shift. A co-worker saw defendant, who went by the name of Jackie, seated in Mrs. Carroway's car on the passenger side. Although defendant knew Mrs. Carroway, had dated her daughter Velvalla for about a year, and had at times stayed in Mrs. Carroway's home in Hillsborough, he had never taken her to work or picked her up from work. Shortly after 5:00 that afternoon, the car with its two passengers was seen at a convenience store. Defendant pumped gas as Mrs. Carroway stood by and watched. Nothing was unusual about the appearance of the two.

Between 8:00 and 8:30 p.m. that evening, Mrs. Brenda Emory saw a yellow 1974 Buick, occupied by two unidentified black persons, in front of her house on Kiger Road in Orange County, northeast of Hillsborough. Shortly thereafter, as she drove to pick up her children, Mrs. Emory saw the same car again at an intersection about one-half mile from her house. The car, later identified as Mrs. Carroway's car, was still occupied by two black persons. Defendant and the victim were both black.

At approximately 9:00 p.m., Bob Lloyd and Cannie Bacon saw the same car parked on Kiger Road. Smoke was coming out of the car. The two occupants of the car were fighting. As Mr. Lloyd drove past Mrs. Carroway's car, one of the occupants blew the horn. Ms. Bacon testified that Mrs. Carroway screamed for help and fell out of the car. She ran toward Lloyd's vehicle and then fell face down in the road. At that point, the driver of Mrs. Carroway's car, later identified by Ms. Bacon as defendant, drove away from the scene. Mr. Lloyd left to seek assistance. Mrs. Carroway was taken to North Carolina Memorial Hospital where she died. Neither Mr. Lloyd nor Ms. Bacon testified to having heard gunshots at any point.

The medical examiner who performed the autopsy testified that Mrs. Carroway was shot three times at close range—once in the right hand and twice in the abdomen. It was the medical examiner's expert opinion that the cause of death was multiple gunshot wounds.

Several of the persons who arrived at the scene of the incident on Kiger Road asked Mrs. Carroway who had done this to her. Those who heard her testified that she mumbled and did not speak clearly, but her responses were variously heard as "Jack Adams," "Jack," "Obbins," "Abrams," or "Ubbins."

Earnest Thompson testified that one week prior to the shooting incident, defendant stole from him a .22 caliber Harrison and Richardson gun. The day following the shooting of Mrs. Carroway, police seized that same gun from a taxicab driver in Durham to whom it had been sold by defendant and another man. A special agent of the North Carolina State Bureau of Investigation testified that one of the bullets removed from Mrs. Carroway's body had been fired from the .22 caliber revolver which the Durham police recovered from the taxicab driver.

Steven Thomas Carpenter, an expert in the field of firearms and tool mark identification, testified that the discharge of a weapon such as the one used would produce gun residue, and would produce, if fired in a car, smoke for approximately 15 or 20 seconds. He added that, if air were circulating in the car, the gunshot residue would be disbursed "at a much faster rate." He also testified that the discharge of the gun would create a "loud sound" and that hearing protectors were needed when testing the guns.

There was also evidence that on 13 June 1974, one week prior to the incident, defendant had quarreled with the deceased's daughters Velvalla and Walinda and had threatened to "get" one of them.

Mrs. Carroway was five feet seven inches tall and weighed approximately 195 pounds.

Defendant presented no evidence. The jury returned a verdict of guilty of second-degree murder. Following a sentencing hearing, the trial judge found certain aggravating and mitigating factors and that the aggravating factors outweighed the mitigating factors. He thereupon imposed the maximum sentence of life imprisonment. Defendant appealed to this Court as a matter of right.

*Rufus L. Edmisten, Attorney General, by Michael R. Morgan, Assistant Attorney General, for the State.*

*Alonzo Brown Coleman, Jr., and Donald R. Dickerson for defendant-appellant.*

BRANCH, Chief Justice.

[1] Defendant first assigns as error the trial judge's denial of his motion to dismiss on grounds of insufficient evidence. Defendant contends that the State failed to show the existence of malice sufficient for the jury to find him guilty of second-degree murder.

The test of the sufficiency of the evidence in a criminal case is whether there is substantial evidence of each essential element of the offense charged, or of a lesser included offense of that charged. *State v. Roseman,* 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Mason,* 279 N.C. 435, 183 S.E. 2d 661 (1971).

> The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; . . . .

*State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980).

Second-degree murder is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Downey,* 253 N.C. 348, 117 S.E. 2d 39 (1960). Malice may be express or implied and it need not amount to hatred or ill will, but may be found if there is an intentional taking of the life of another without just cause, excuse or justification. *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). Furthermore, we have often stated the well-settled rule in this jurisdiction that,

> If the State satisfies the jury beyond a reasonable doubt or if it is admitted that a defendant intentionally assaulted another with a deadly weapon, thereby proximately causing his death, two presumptions arise: (1) that the killing was unlawful and (2) that it was done with malice. Nothing else appearing, the person who perpetrated such assault would be guilty of murder in the second degree.

*State v. Jones,* 287 N.C. 84, 100, 214 S.E. 2d 24, 35 (1975).

In the instant case, the evidence tended to show that defendant, known as "Jackie," threatened one of the victim's daughters and also stole a gun one week prior to the incident in question; that he inexplicably arrived at the victim's workplace and drove away with her; that the two were seen parked on a dirt road later that night fighting; that the victim screamed for help just before falling out of the car; that she had been shot three times at close range, with one defensive-type gunshot wound in her hand; that she died as a result of multiple gunshot wounds inflicted by the same gun stolen by defendant; and that, when asked who had done this to her, she mumbled replies which sounded like "Ubbins," "Obbins," "Jack Adams," "Abrams," and "Jack."

We hold that the evidence in this case was sufficient to support a jury finding that defendant intentionally assaulted Mrs. Carroway with a deadly weapon and thereby proximately caused her death. This assignment is overruled.

Defendant next contends that the trial judge erred in failing to instruct on the lesser included offense of voluntary manslaughter. Defendant in essence argues that the circumstances surrounding the shooting are in doubt, and since no one knows what actually occurred, the ambiguity in the evidence would permit the jury to infer that the shooting was a result of heat of passion upon adequate provocation. We disagree.

Defendant relies for support on the case of *State v. Manning*, 251 N.C. 1, 110 S.E. 2d 474 (1959). There the Court first held that certain of the solicitor's statements constituted prejudicial error. The Court then, without any prior statement as to the facts in the case, considered the defendant's contention that the judge erred in not instructing on voluntary manslaughter. The Court stated in summary fashion and without citation to authority:

In respect to this contention this Court is of the opinion that the fact that defendant and his wife were together in the woods 10 minutes (R. p. 32), as the State's evidence tends to show, before any shots were heard is a circumstance that requires a charge on manslaughter.

The evidence discloses that there were no eyewitnesses to the shooting, and no one of the State's witnesses knows what actually took place on this occasion. It rests in speculation.

251 N.C. at 5-6, 110 S.E. 2d at 477.

Our reading of the entire transcript in that case, however, reveals that there is plenary evidence from which a jury might find premeditation, deliberation, and an intentional assault with a deadly weapon from which to presume malice, and none from which it might find heat of passion upon adequate provocation. We, therefore, conclude that the *Manning* Court incorrectly found error in the failure to instruct on voluntary manslaughter. That portion of *Manning* that finds error in the failure of the trial judge to instruct on voluntary manslaughter is accordingly overruled.

It is the duty of the trial court to instruct the jury on the law applicable to the substantive features of the case arising on the evidence, and when there is evidence to support the lesser in-

cluded offense of voluntary manslaughter, defendant is entitled to have that offense submitted to the jury under proper instructions. *State v. Montague,* 298 N.C. 752, 259 S.E. 2d 899 (1979). Voluntary manslaughter is the unlawful killing of a human being without malice, premeditation or deliberation. *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971). One who kills a human being under the influence of sudden passion, produced by adequate provocation, sufficient to negate malice, is guilty of manslaughter. *State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135 (1971).

In *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575 (1975), *reversed on other grounds,* 432 U.S. 233 (1977), we stated that once the State proves beyond a reasonable doubt that the defendant intentionally inflicted a wound upon the deceased with a deadly weapon which proximately resulted in death, the presumptions of malice and unlawfulness are raised. The burden is then upon the defendant "to go forward with or produce some evidence of all elements of self-defense or heat of passion on sudden provocation, or rely on such evidence as may be present in the State's case." *Id.* at 650, 220 S.E. 2d at 588. We further observed:

> If, after the mandatory presumptions are raised, there is no evidence of a heat of passion killing on sudden provocation and no evidence that the killing was in self-defense, *Mullaney* permits and our law requires the jury to be instructed that defendant must be convicted of murder in the second degree. If, on the other hand, there is evidence in the case of *all* the elements of heat of passion on sudden provocation the mandatory presumption of malice disappears but the logical inferences from the facts proved remain in the case to be weighed against this evidence. If upon considering all the evidence, including the inferences and the evidence of heat of passion, the jury is left with a reasonable doubt as to the existence of malice it must find the defendant not guilty of murder in the second degree and should then consider whether he is guilty of manslaughter.

*Id.* at 651, 220 S.E. 2d at 589. (Emphasis added.)

[2] In order for an accused to reduce the crime of second-degree murder to voluntary manslaughter he must rely on evidence presented by the State or assume a burden to go forward with or produce some evidence of all elements of heat of passion on sud-

den provocation. In order to do this, defendant in instant case must have shown three things: first, that he shot the victim Carroway in the heat of a passion; second, that this passion was provoked by acts of victim Carroway which the law regards as adequate provocation; and, third, that the shooting took place so soon after the provocation that the passion of a person of average mind and disposition would not have cooled. See 40 Am. Jur. 2d, "Homicide," § 56 (1968).

[3] This record is barren of any evidence tending to show that defendant's passion was provoked by the acts of the victim Carroway which the law regards as adequate provocation. Defendant presented no evidence. The State's evidence showed that two passersby observed smoke coming from the automobile occupied by defendant and the victim Carroway. While the occupants were subsequently observed fighting, there is no evidence that the fight was provoked by the victim Carroway; neither is there evidence of which of the two might have been the aggressor in the fight. Likewise, there is no evidence that the fighting occurred prior to or during the shooting. In fact, the two observers testified that they saw the scuffle *after* they noticed the smoke coming from the car. In light of the firearms expert's testimony that guns of the type used could produce clouds of smoke and did cause loud noise upon discharge, there is an inference, at least, that rather than being provoked by the affray, the shooting actually occurred *prior to* the scuffle. In any event, the State's evidence does not show, and defendant has not gone forward with any evidence to show, heat of passion on sudden provocation.

We therefore hold that the trial judge did not err in failing to instruct on the lesser included offense of voluntary manslaughter.

[4] Defendant contends, finally, that the trial court erred in failing to instruct on the offense of involuntary manslaughter.

The law applicable to defendant's contention is stated in *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976), as follows:

Involuntary manslaughter is the unintentional killing of a human being without malice, proximately caused by (1) an unlawful act not amounting to a felony nor naturally dangerous to human life, or (2) a culpably negligent act or omission. *State v. Ward*, 286 N.C. 304, 210 S.E. 2d 407.

*Id.* at 321, 230 S.E. 2d at 153. In *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963), this Court stated:

> It seems that, with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, *in the absence of intent to discharge the weapon,* or in the belief that it is not loaded, and under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter. (Citations omitted.) (Emphasis added.)

*Id.* at 459, 128 S.E. 2d at 893.

Defendant contends that the mere fact that the evidence shows a scuffle between the victim and him is sufficient to permit the jury to infer that there was no intentional discharge of the weapon. We disagree. Defendant did not testify or put on any evidence in the instant case. The State's evidence tends to show that one week prior to the shooting, defendant had quarreled with members of deceased's family, had threatened "to get" one of them and had stolen a gun. The evidence further tended to show that, during the scuffle as witnessed on Kiger Road, Mrs. Carroway screamed for help, and that afterwards as she lay on the road, she indicated that someone was responsible for the wounds and mumbled a name which sounded much like defendant's. The evidence also showed that Mrs. Carroway was shot three times. The State's evidence, if believed, tends to show an intentional shooting. There is no evidence from which the jury might infer that there was an unintentional discharge of the weapon. *See State v. Gerald,* 304 N.C. 511, 284 S.E. 2d 312 (1981); *State v. Oxendine,* 300 N.C. 720, 268 S.E. 2d 212 (1980). This assignment is overruled.

Defendant received a fair trial, free from prejudicial error.

No error.