STATE v. MITCHELL

[110 N.C. App. 250 (1993)]

STATE OF NORTH CAROLINA v. DEMON MITCHELL

No. 9216SC88

(Filed 18 May 1993)

1. **Riot and Inciting to Riot § 2.1 (NCI3d)— assemblage of persons—can throwing—threat to officers—sufficiency of evidence of riot**

   In a prosecution of defendant for engaging in a riot, the evidence was sufficient to show that a riot occurred where it tended to show that 100 to 150 people congregated in the parking lot of a city activity center where a dance was in progress; inside the building was an assembly or gathering of people, of which defendant was a part; the crowd began throwing coins and cans, yelling threats to police officers, kicking the glass doors, and rushing the officers when they fell to the floor; and such evidence was sufficient to show that disorderly and violent conduct took place and that the conduct resulted in injury or damage to persons or property.

   **Am Jur 2d, Mobs and Riots §§ 36-38.**

   **What constitutes sufficiently violent, tumultuous, forceful, aggressive, or terrorizing conduct to establish crime of riot in state courts. 38 ALR4th 648.**

2. **Riot and Inciting to Riot § 2.1 (NCI3d)— willfully engaging in riot—sufficiency of evidence**

   Evidence was sufficient to show that defendant "willfully engaged" in a riot in violation of N.C.G.S. § 14-288.2(b) where it tended to show that defendant cursed at an officer, pulled away from his grasp, contested the reason for his arrest, began swinging his head when handcuffed, and then ran into and knocked over a table where an officer was standing trying to calm the crowd.

   **Am Jur 2d, Mobs and Riots § 36.**

   **What constitutes sufficiently violent, tumultuous, forceful, aggressive, or terrorizing conduct to establish crime of riot in state courts. 38 ALR4th 648.**

STATE v. MITCHELL

[110 N.C. App. 250 (1993)]

Appeal by defendant from Judgment entered 18 September 1990 by Judge Jack A. Thompson in the Robeson County Superior Court. Heard in the Court of Appeals 12 February 1993.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Robin Michael, for the State.*

*William L. Davis, III for defendant-appellant.*

WYNN, Judge.

Defendant was originally charged by warrants with disorderly conduct, larceny, injury to personal property, assault on a law enforcement officer and non-felonious engaging in a riot. In district court, defendant was found guilty of engaging in a riot, disorderly conduct and assault on a law enforcement officer. The remaining charges were dismissed. Defendant appealed his conviction as of right to Superior Court. Defendant was convicted in Superior Court of non-felonious engaging in a riot and sentenced to two years imprisonment.

The State's evidence tended to show the following. On the evening of 3 November 1990, Mrs. Marilyn F. Thompson was managing a teen party at the Parkview Activity Center in Lumberton, North Carolina (hereinafter "Parkview"). Parkview is a public facility, owned and operated by the City of Lumberton. The admission price for the party was two dollars, paid upon entry. At around 10:00 p.m. Mrs. Thompson noticed that a large number of people were congregating in the parking lot near the entrance to the building. Mrs. Thompson called the Lumberton City Police Department and requested assistance in dispersing the crowd.

Officers Peter Monteiro and Donald Ward were dispatched to Parkview. The officers arrived to find between one hundred and one hundred fifty young people in the parking lot of Parkview. Mrs. Thompson instructed the officers to tell the individuals outside to either leave the parking lot or come inside. In attempting to disperse the crowd, Officer Ward encountered the defendant and told him to either leave the premises or go inside. Defendant turned away and began talking with a friend. Officer Ward continued telling others to leave the grounds or go inside. In doing so, Officer Ward ran into defendant again and told him the same. Defendant responded this time by moving toward the entrance to Parkview. As he approached the entrance, he encountered Officer Monteiro,

who also told him to go inside. Officer Monteiro testified that when he advised defendant to go inside the building or leave the premises, defendant stated that he "wasn't paying two dollars to go to a . . . dance." Officer Monteiro then told defendant he would have to leave and defendant started walking toward the entrance. When Officer Monteiro again told him he would have to go inside or leave, defendant replied,"F--- you." At that time Officer Monteiro placed his hand on defendant's arm and advised him that he was under arrest for disorderly conduct. Defendant swung his arm back hitting Officer Monteiro and continued walking to the door. Once inside, Officer Monteiro advised defendant that he was under arrest for disorderly conduct and assault on a law enforcement officer and grabbed defendant's arm. Defendant stated that he had done nothing to be arrested for, pulled away from Officer Monteiro and the two of them "ended up against the wall." Officer Monteiro and Officer Ward told defendant to calm down, to let them cuff him, and that they would take him to the "magistrate's office and get this taken care of." Defendant did settle down and they placed the handcuffs on him. After his hands were cuffed, defendant began pushing and swinging with his head.

At that point, the crowd inside began throwing coins and cans, cursing and threatening the officers with bodily harm. The crowd outside began kicking and hitting the glass doors to the entrance. Officer Ward jumped up on a table and attempted to calm the crowd. Defendant ran for the table knocking it down and sending Officer Ward, Officer Monteiro and defendant to the floor. The crowds rushed the officers, kicking them to the extent that both suffered personal injuries. Defendant fled the scene and turned himself in later that evening at the magistrate's office.

At the close of the State's evidence defendant moved to dismiss the warrant as being fatally defective and moved to dismiss based on insufficiency of the evidence. The court denied both motions. Defendant then put on his own evidence.

Defendant testified that he was complying with the officers' request that he go inside the dance when Officer Monteiro told him again to go inside. Defendant asked Officer Monteiro "why he was talking just to [him]." After an exchange of words, defendant and a friend went inside the door, defendant looked back and said to Officer Monteiro, "F--- you." At that point, Officer Monteiro told defendant that he was under arrest and placed the handcuff

on defendant's right hand. Defendant stated that he would not give Officer Monteiro his other hand because Officer Monteiro would not tell him why he was being arrested. Another exchange occurred between Officer Monteiro and defendant after which defendant gave him his other hand to be cuffed and stated that he would go downtown. After the cuffs where placed on defendant, the crowd started throwing cans and coins and yelling. Officer Ward got on top of the table to calm the crowd. Defendant and Officer Monteiro were leaning against the table and it fell sending all three to the floor. Defendant stated that he was kicked in the head and a friend then pulled him from the crowd and outside. Defendant ran to his home and then turned himself in at the magistrate's office.

Defendant renewed his motions to dismiss at the close of all of the evidence and the court again denied his motions. The jury returned a verdict of guilty of non-felonious engaging in a riot and not guilty of assault on a police officer. From judgment and sentencing defendant appeals.

## I.

Defendant assigns as error the trial court's denial of his motion to dismiss at the close of all of the evidence based upon insufficiency of the evidence.

On a motion to dismiss the trial court must determine the sufficiency of the evidence. If the State offers substantial evidence of each essential element of the offense charged, the motion must be denied. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In making its determination, the trial court may consider all of the evidence actually admitted, both competent and incompetent. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). The evidence is to be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *Id.*

N.C. Gen. Stat. § 14-288.2(b) provides: "Any person who willfully engages in a riot is guilty of a misdemeanor." Thus, in proving this offense, the State must show (1) that a riot occurred, and (2) that the defendant willfully engaged in the riot.

[1]   N.C. Gen. Stat. § 14-288.2(a) sets out the elements for a riot as follows: (1) Public disturbance; (2) Assemblage; (3) Three or more

persons; (4) Disorderly and violent conduct, or the imminent threat of disorderly and violent conduct; and (5) Results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property. In the subject case, where the State's evidence tended to show that there were approximately 100 to 150 people in the parking lot of Parkview and more than 100 people inside the building, there clearly was an assembly or gathering of people, of which defendant was a part. *See State v. Riddle*, 45 N.C. App. 34, 37, 262 S.E.2d 322, 325, *disc. rev. denied and appeal dismissed*, 300 N.C. 201, 269 S.E.2d 627 (1980) (The law requires that the State show only that an assemblage, a group or gathering of three or more people occurred). Moreover, the evidence tended to show that the crowd began throwing cans and coins, yelling threats to the police officers, kicking the glass doors and rushed the officers when they fell to the floor. This activity resulted in injury to the officers and damage to Parkview. This evidence was sufficient to show that disorderly and violent conduct took place and that the conduct resulted in injury or damage to persons or property. Thus, the State's evidence was sufficient to show that a riot occurred.

[2] Defendant next argues that, even if a riot did occur, the State produced insufficient evidence that he "willfully *engaged* in [that] riot" as required by the statute. The case law interpreting this statute is sparse, however, it is clear that "mere presence at the scene of a riot may not alone be sufficient to show participation in it." *Riddle*, 45 N.C. App. at 37, 262 S.E.2d at 325 (citing *State v. Brooks*, 287 N.C. 392, 215 S.E.2d 111 (1975)). The statute does not define the word "engage," therefore we must give it its "common and ordinary meaning." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202-03 (1974). Webster's defines "engage" as "to employ or involve oneself; to take part: participate; to enter into conflict." *Webster's Third New International Dictionary* (1986). Thus, in using the phrase, "willfully engaged in," we find that the legislature contemplated active participation by the defendant in the riotous activity.

The State's evidence tended to show that defendant cursed at Officer Monteiro, pulled away from his grasp, contested the reasoning for his arrest and began swinging his head when hand-cuffed. Significantly, when the riotous activity began defendant ran into the table upon which Officer Ward was standing. Defendant then left the scene.

We conclude that the evidence of defendant's resistance to being arrested and the apparent assault on Officer Ward does not by itself appear sufficient to support the charge of participation in riotous activity. However, this conduct when coupled with the defendant's deliberate act of running into the table upon which the officer was standing while the riot was taking place, was clearly sufficient to show that the defendant "willfully engaged" in the riot.

Defendant's remaining assignment of error regarding the sufficiency of the warrant is without merit. As a result, we find no error in his conviction.

No error.

Judges EAGLES and COZORT concur.